## THE UNION NATIONAL BANK OF MUNCIE *v*. FINLEY ET AL.

[No. 21,744. Filed November 21, 1913.]

1. HUSBAND AND WIFE.—*Loans to Wife.*—*Statutes.*—Section 7856 Burns 1908, Acts 1903 p. 394, providing that a married woman who executes and delivers her promissory note or other evidence of indebtedness for the purpose of securing a loan, and states under oath that the money is to be for her own separate use or the betterment of her property or separate business, shall not be permitted thereafter to claim that such loan was made for the use and benefit of any person other than herself, has no application where the money loaned to a married woman is not paid to her in cash, or by check or draft. p. 474.

2. HUSBAND AND WIFE.—*Liability on Notes.*—*Judgment.*—Where the amount found due on a note executed by a husband and wife was $7,774, and for which amount the wife was only liable to the extent of $4,102.12, the judgment should have been against both in the sum of $4,102.12, and against the husband in the further sum of the difference between that amount and $7,774. p. 474.

3. HUSBAND AND WIFE.—*Estates by Entireties.*—*Sales on Execution.*—*Attachment.*—Property held by a husband and wife as tenants by entireties is subject to sale on execution issued on a judgment rendered against both the husband and the wife; and in a proper case such property may be subjected to levy under a writ of attachment. p. 475.

4. APPEAL.—*Review.*—*Questions of Fact.*—*Conflicting Evidence.*— Where the evidence is conflicting, in determining whether a finding in favor of the appellee is warranted, only the uncontroverted facts, the evidence most favorable to appellee, and the favorable inferences that may be drawn therefrom, can be considered on appeal. p. 475.

5. ATTACHMENT.—*Nonresidence of Defendants.*—*Evidence.*—*Exemption from Execution.*—A finding that a husband and wife, defendants in an attachment proceeding were residents of the State when the proceeding was instituted, is not supported by evidence showing that they were once residents of the State, that they took no household goods with them, that they still own the property in which they resided, that the household goods were assessed for taxation in the name of the wife and that she regularly pays the bills for water, gas, etc., used by her mother who occupies their house, and that it is their intention to return to the State to live, where there was other evidence

Union Nat. Bank *v.* Finley—180 Ind. 470.

showing that they went to Kentucky and remained for a time while the husband was establishing a factory, and thence to eastern points where they remained while he was engaged in lecturing, that while in Kentucky they leased a furnished house, and, on going east, lived in boarding and rooming houses, and that they had executed deeds to land in this State in which they were mentioned as residents of the respective states in which they lived when the deeds were executed; but it cannot be said that such evidence fails to support a finding that defendant's wife was a resident householder so as to be entitled to the benefit of the exemption laws. pp. 475, 478, 481.

6. ATTACHMENT.—*Nonresidence.*—*"Residence."*—Within the meaning of the attachment law giving a right of attachment on the ground of nonresidence, the word "residence" contemplates an actual residence, as distinguished from a legal or constructive residence. p. 477.

7. EXEMPTIONS.—*Exemption from Execution.*—*Statutory Provisions.*—*Construction.*—The provisions of §22, Art. 1, of the Constitution requiring the enactment of wholesome exemption laws, and of §745 Burns 1908, §703 R. S. 1881, exempting from sale on execution the property of "any resident householder" to the value of $600, were based on considerations of public policy and humanity, and are most liberally construed in favor of the debtor. p. 480.

8. ATTACHMENT.—*Residence.*—*Exemption from Execution.*—One may be a nonresident of the State within the meaning of the attachment laws, and at the same time a resident householder within the meaning of the exemption statute. p. 480.

9. EXEMPTIONS.—*Exemptions from Execution.*—*Resident Householder.*—*Continuation of Status.*—The status of a resident householder continues until residence outside the State, actual or constructive, shall be acquired. p. 481.

10. APPEAL.—*Review.*—*Disposition of Cause.*—Where there was evidence to support the finding of the court that one of the defendants was liable for the amount adjudged against her, and no more, and that she was entitled to hold her property as exempt from execution, and also to sustain a judgment against the other defendant, justice does not require a new trial because of an erroneous finding that defendants were residents of the State within the meaning of the attachment law, or because of an unwarranted statement in the judgment that the property held by defendants by entireties is exempt from levy on the writ of attachment and not liable to execution under the judgment, but the judgment will be affirmed in part, reversed in part, and remanded with instructions to modify. p. 482.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by The Union National Bank of Muncie against Mary E. Finley and others. From a judgment for plaintiff granting partial relief, the plaintiff appeals. *Affirmed* in part, and *reversed* in part.

*Silverburg, Bracken & Gray,* for appellant.
*McClellan & Hensel,* for appellees.

Morris, J.—This was an action by appellant against Mary E. Finley and her husband, Harry M. Finley, on a promissory note. Affidavits in attachment and garnishment were filed respectively against the Finleys and the John J. Hartley Agency. In the attachment affidavit it was alleged that the Finleys were nonresidents of Indiana. By virtue of the order of attachment the sheriff seized two lots that were owned by the Finleys, as tenants by the entireties, and also certain parcels of real estate of which appellee Mary E. Finley was sole owner. The John J. Hartley Agency, garnishee defendant, filed its answer alleging that it had in its possession $125 in money belonging to defendants Harry M. Finley and Mary E. Finley his wife. Harry M. Finley filed an answer denying the averments of the complaint and affidavit in attachment, and further defended on the theory that the two lots owned by him and his wife as tenants by the entireties were not subject to levy, under a writ of attachment, and not subject to sale on execution. Mrs. Finley answered, alleging the same facts, and further pleaded coverture and suretyship as a defense to the note. She also alleged that she was a resident householder of this State, and solely owned property with a total value of less than the statutory householder's exemption of $600, and filed with her answer a schedule of all her property. Appellant replied to the affirmative answers.

By agreement, the issues relating to the attachment, were tried by the court, and the other matters in controversy were determined by a jury, which returned the following verdict: "We the jury find for the plaintiff against both

of the defendants, and fix and assess the amount of plaintiff's recovery against Harry M. Finley in the amount of $3,629.65 + $200.00 attorney's fees, and against Mary E. Finley in the amount of $3,189.75 + $200.00''. The amount of the note, principal and interest, was $7,274. Evidently the jury intended to find in favor of Mrs. Finley, on her defense of suretyship as to a portion of the debt, and against her as to the remainder. It also appears, in addition to the other defects in the verdict, that there was an error in the calculation of interest accrued on the note.

After the return of the verdict, the Finleys, in open court, offered to let judgment be entered against Harry M. Finley in the sum of $7,274 and $500 attorney's fees additional, and against Mrs. Finley in the sum of $4,102.12, which included $200 attorney's fees, ''the same being a part of the amount of the judgment to be rendered against the defendant Harry M. Finley.'' Appellant in open court, declined the offer. The court made a general finding in favor of the Finleys, on the attachment issues, and found that the Finleys were residents of this State. Judgment was rendered on the note against Harry M. Finley in the sum of $7,774 with interest from date of verdict (May 20, 1910), and against Mrs. Finley in the sum of $4,102.12, ''which sum is a part of said judgment heretofore rendered against said defendant Harry M. Finley''. It was adjudged that the Finleys ''have and hold, as free from attachment and execution'' the lots owned by them as tenants by the entireties, and that Mrs. Finley was a resident householder of this State and owned property of less value than $600, and was entitled to claim the same as exempt from execution. Appellant's motions for a *venire de novo*, a new trial, and to modify the judgment, were overruled.

Aside from defects in form, in the verdict and judgment, appellant claims that Mrs. Finley is liable for the entire debt evidenced by the note. The note is dated April 12, 1909, and calls for $6,819.40. It was executed in renewal

of a note dated August 5, 1907, for $6,300 which was executed in consideration of the cancelation of a $3,000 note, theretofore executed by the Finleys, and a draft for the balance, payable to Mrs. Finley. Mrs. Finley, at the time of the transaction, delivered to appellant her affidavit which recited that the $6,300 she was then borrowing was for her separate use. §7856 Burns 1908, Acts 1903 p. 394. The $3,000 note was executed in February, 1907, in consideration of the cancelation of a note for $1,750 given for a previous loan to Harry M. Finley, and a new loan of $1,250, the proceeds of which were placed to the credit of Harry M. Finley in appellant's bank. At that time Mary E. Finley made an affidavit stating that the entire $3,000 loan was for her separate benefit. Copies of these affidavits are set out in appellant's reply to Mary E. Finley's answer alleging coverture and suretyship. Mary E. Finley received no part of the proceeds of the new loan of $1,250, and no part of the proceeds of the $1,750 note; on the other hand, Harry M. Finley received the entire proceeds of the $1,750 note, and these facts were known to appellant. Section

1.   7856 Burns 1908, Acts 1903 p. 394, has no application to a loan made to a married woman, unless the lender shall pay the proceeds to her "in cash, or by check, or draft." Mrs. Finley never received any portion of the consideration of the debt evidenced by the note in suit except the

2.   draft of August 5, 1907, and as to the remainder she executed the note as surety, and is not bound thereby. §7855 Burns 1908, §5119 R. S. 1881. As the judgment against her included the amount, principal and interest, of the debt represented by the amount of the draft payable to her, there was no error in the amount adjudged against her. The judgment on the note was defective in form. It should have been rendered against both the Finleys in the sum of $4,102.12, and against Harry M. Finley in the further sum of the difference between that amount and $7,774.

The trial court held that the real estate owned by the

Finleys as tenants by entireties is not subject to levy under an order of attachment, in a suit on an obligation of 3. such husband and wife, and not subject to execution under a judgment against both. It is claimed by appellant that this holding was erroneous. The case of *Sharpe v. Baker* (1911), 51 Ind. App. 547, 96 N. E. 627, involved the same principle here in controversy. In a carefully considered opinion, it was held by the Appellate Court that land held by husband and wife as tenants by entireties is subject to execution under a judgment against husband and wife. On petition to transfer the cause, the holding of the Appellate Court was approved by this court. Here the obligation sued on was executed by the husband and wife and judgment rendered against both, and, under the doctrine declared in *Sharpe v. Baker, supra,* the land owned by them as tenants by entireties is subject to sale on execution under the judgment; and it must necessarily follow that it is subject to levy under a writ of attachment, where there is statutory ground for such writ, in a suit on a note executed by the husband and wife, for a consideration binding on both.

It is also contended by appellant that the evidence 4. shows that the Finleys were nonresidents of this State, when the attachment proceedings were instituted, and that there is no evidence to support the 5. contrary finding of the trial court. In some particulars, there was a conflict in the evidence on this subject, and consequently only the uncontroverted facts, the evidence most favorable to the Finleys, and such inferences as might be drawn favorable to their contention, can be considered here. *Peabody-Alwert Coal Co. v. Yandell* (1913), 179 Ind. 222, 100 N. E. 758. The facts of such character, are as follows: Harry M. Finley's principal occupation, for thirty years before the trial, was lecturing, under the name of F. M. Donavan, on spiritualism and occultism; they were married about 1898; for some time previous to June

1906, they were *bona fide* residents of Litchfield, Illinois. At the latter date, they removed to Muncie, Indiana, and brought their household furniture with them, where they lived with Mrs. Finley's mother, in apartments at 115½ West Jackson Street. These apartments were on the second floor of a building, the ground floor of which was occupied by the U. S. Express Company. The building was owned by the Finleys. From June, 1906, to February, 1907, the Finleys were *bona fide* residents of Muncie, Indiana. Early in 1907, Harry M. Finley was offered a bonus of $15,000 by the Commercial Club of Paducah, Kentucky, to come there and establish a bottle factory. The offer was accepted, and in February or March, 1907, Mr. and Mrs. Finley removed from Muncie to Paducah. They did not take any household furniture with them, but lived, while in Paducah in a furnished house leased by them. Mr. Finley erected the bottle factory in the spring and summer of 1907, and received the bonus. The real estate, on which the plant was located, was held in Mr. Finley's name and the manufacturing business was also conducted in his name until January, 1908, when a corporation was formed with a capital stock of $75,000, and a deed was made by him to the corporation, in consideration of the transfer to him of $60,000 par value, of the capital stock. In the spring of 1908, the Finleys left Paducah, and, during the remainder of the year, 1908, and the year, 1909, Mr. Finley was lecturing in Connecticut and Massachusetts. During that time his wife was constantly with him, and they lived together in boarding and rooming houses in Mishawaha, Lake Pleasant and Boston, Massachusetts, and in Niantec and Hartford, Connecticut. When the attachment proceedings were instituted, on October 6, 1909, they were living in Boston, Massachusetts. Previous to this date, Mrs. Finley had not been in Indiana since February, 1907, and, in the same interval Mr. Finley was here once only, and that was more than one year before October 6, 1909. Mr. Finley was not assessed for taxation on any

personalty in Muncie in the years, 1908 and 1909, and paid no poll tax in Indiana. Mrs. Finley was assessed in 1909, on personal property, consisting of household furniture, piano and a sewing machine, located at her mother's residence in Muncie. The list was signed by Mrs. Finley's mother. During the years 1908 and 1909, the Finleys' insurance policies, on Muncie property, were delivered and kept at the residence occupied by Mrs. Finley's mother. Mail matter, addressed to the Finleys, was delivered at the same place. Once each week Mrs. Finley sent a check to her mother, at Muncie, to pay gas, water, electric light, telephone bills, etc. In June, 1909, the Finley's sent from a Massachusetts town, addressed to the mayor of Muncie, the following telegram: "As residence property owners, we demand asphalt pavements on West Jackson street." When this suit was commenced, and long prior thereto, Mrs. Finley had money on deposit to her credit in appellant's bank at Muncie. Mr. Finley testified that when he left Muncie for Paducah, Kentucky, he intended to come back to Muncie to live when he got through with the glass factory, but did not know when that would be. In July, 1907, Mrs. Finley wrote from Paducah, Kentucky, to one of appellant's directors at Muncie, a letter soliciting an increase in a loan by the bank; the letter contained the following: "Our factory here, in less than a year, will, I am sure, pay all our indebtedness." In 1908, the Finleys executed a deed to land in Delaware County which described them as residents of McCracken County, Kentucky, and on October 13, 1909, they executed a deed in Franklin County, Massachusetts, which recites the grantors as residents of that county and state. In June and July, 1909, they executed two deeds for Delaware County, Indiana, real estate, which recites them as residents of said county.

6. Was the finding of the court, in the attachment proceeding, that the Finleys were residents of Indiana, sustained by the evidence? In *Hanson* v. *Graham*

(1890), 82 Cal. 631, 23 Pac. 56, 7 L. R. A. 127, the attachment debtor went to Chili, about four months before the attachment proceedings were instituted, to attend to his business as a contractor with the intention of remaining as long as his work might require, and then to return. The court said: "we think that the residence referred to is an actual as contradistinguished from a constructive or legal residence; and that there may be such an actual residence, notwithstanding a general intention to return to the place of legal residence or domicil".

In *Long* v. *Ryan* (1879), 30 Grat. (Va.) 718, 720, it was said: "It is apparent that the word residence, like that of domicil, is often used to express different meanings, according to the subject-matter. In statutes relating to taxation, settlements, right of suffrage, and qualification for office, it may have a very different construction from that which belongs to it in the statute relating to attachments. In the latter, actual residence is contemplated, as distinguished from legal residence." "A man may be a resident of a particular locality without having his domicil there. He can have but one domicil at one and the same time, at least for the same purpose, although he may have several residences." In *Dorsey* v. *Kyle* (1869), 30 Md. 512, 96 Am. Dec. 617, the Maryland court held that "In contemplation of the attachment law, the domicil may be in this State, while the actual residence is in another." In *Carden* v. *Carden* (1890), 107 N. C. 214, 12 S. E. 197, 22 Am. St. 876, it was said: "The prominent idea is, 'that the debtor must be a nonresident of this State, where the attachment is sued out, not that he must be a resident elsewhere * * *. The essential charge is, that he is not residing or living in the State, that is, he has no abode or home within it *where process may be served so as effectually to reach him.* In other words, his property is attachable if his residence is not such as to subject him *personally to the jurisdiction of the court, and place him upon equality with other residents in this re-*

*spect.'* Waples on Attachment 35. * * * Nonresidence, within the meaning of the attachment law, means the 'actual cessation to dwell within a State for an uncertain period, without definite intention as to a time for returning, although a general intention to return may exist.' *Weitkamp* v. *Loehr* [1886], 53 N. Y. Super. Ct. 83.'' In *Lawson* v. *Adlard* (1891), 46 Minn. 243, 48 N. W. 1019, the Supreme Court of Minnesota held: ''It is apparent, from an examination of the most approved authorities, that, in construing statutes relating to attachment of the property of nonresidents, a wide distinction has been recognized between an actual residence and a legal residence, the latter being generally deemed the domicil, and not the residence, contemplated; the word 'residence' being construed in its popular sense, as the act of abiding or dwelling in a place for some continuance of time.'' The above doctrine was approved in *Webb* v. *Wheeler* (1907), 79 Neb. 172, 112 N. W. 369.

In *Frost* v. *Brisben* (1837), 19 Wend. (N. Y.) *11, 32 Am. Dec. 423, it was held that actual residence, without regard to the defendant's domicil, was within the contemplation of the New York statutes regulating the rights and remedies of creditor and debtor. To the same effect, see, *Matter of Thompson* (1828), 1 Wend. (N. Y.) 43; *Haggart* v. *Morgan* (1851), 5 N. Y. 422, 55 Am. Dec. 350; *State* v. *Allen* (1900), 48 W. Va. 154, 35 S. E. 990, 50 L. R. A. 284, 86 Am. St. 29; *Munroe* v. *Williams* (1891), 37 S. C. 81, 19 L. R. A. 665, 16 S. E. 533.

We are of the opinion that the evidence did not support the court's finding in the attachment proceeding, that the Finleys were residents of Indiana when attachment proceedings were instituted. They actually resided at Paducah, during the period of the erection and operation of the bottle factory, for a year succeeding their removal from Muncie. The fact that it was Mr. Finley's intention to return to Muncie at some indefinite period in the future, did not alter

his status under our attachment law. After the departure from Paducah, there is no evidence that would warrant a finding that the Finleys acquired an actual residence in Indiana, though it might be conceded that no actual residence was acquired in Connecticut or Massachusetts during the time. We therefore hold that under the evidence given in this cause, the Finleys were nonresidents of Indiana, within the meaning of our attachment act.

Is there any evidence to support the finding that Mrs. Finley was a resident householder of this State? In *State v. Allen, supra,* it was held that the word "resident" in the exemption statute of that state should be accorded the same meaning ascribed to the same word found in its attachment act. However, in *Brown v. Beckwith* (1905), 58 W. Va. 140, 51 S. E. 977, 1 L. R. A. (N. S.) 778, 112 Am. St. 955, it was held under the West Virginia exemption act, that until the debtor acquired an actual or constructive residence outside the state, he was entitled to claim the privileges accorded by the exemption statute. The Constitution of Indiana, §22, Art. 1, enjoined the duty on the General Assembly to enact wholesome exemption laws, and this mandate was obeyed by the enactment of §745 Burns 1908, §703 R. S. 1881, which exempts from sale on execution the property of "any resident householder," to the value of $600. These provisions of our Constitution and statute were based on considerations of public policy and humanity; their purpose was not limited to the benefit of the debtor, but extended to his family. They have ever been most liberally construed, by this court, in favor of the debtor. *Pomeroy v. Beach* (1898), 149 Ind. 511, 515, 49 N. E. 370, and cases cited; *Markley v. Murphy* (1913), *ante* 4, 102 N. E. 376, 47 L. R. A. (N. S.) 689.

In view of this policy, we are constrained to hold that one might be a nonresident of Indiana, within the meaning of our attachment laws, while at the same time he might be a resident householder of the

9. State within the meaning of our exemption statute. We further hold that the status of a resident householder continues until residence outside the State,

5. actual or constructive, shall be acquired. Consequently we cannot say that there was no evidence to support the finding that Mrs. Finley was a resident householder of Indiana when the attachment proceedings were instituted.

Appellants filed a motion to modify the judgment, in the following, among other, particulars; (1) by making the judgment for the proper amount, in favor of the plaintiff against both of the Finleys, and against Harry M. Finley in the further amount due plaintiff on the note; (2) by striking out all that portion of said judgment which relates to the proceedings in attachment and garnishment and inserting, in place thereof an order that the attached property owned by the Finleys as tenants by entireties, or so much thereof as may be necessary to satisfy plaintiff's judgment and costs be sold for such purpose and that the garnishee defendant be ordered to pay plaintiff the $125 in its hands belonging to the Finleys; (3) by striking out the portion of the judgment which adjudges that Mary E. Finley is entitled to hold her individual property free from attachment and execution, under the householder's exemption law; (4) by striking out that portion of the judgment which decrees that the Finleys hold free from attachment and execution the lands held by them as tenants by entireties. The motion to modify was overruled. The trial court, in the particulars mentioned, erred, except as to the third one, although as to the first the defect was in reality a formal one. As to said third particular, no error was committed. Many other questions are presented by appellant's brief, which we deem unnecessary to consider.

Section 702 Burns 1908, §660 R. S. 1881, provides that when a judgment is reversed, in whole or in part, this court shall remand the cause with instructions for a new trial,

"when the justice of the case requires it, but if no new trial is required, with particular instructions relative to the judgment to be rendered and all modifications thereof." Justice does not here require a new trial. There was evidence to support the finding of the court that Mrs. Finley was liable on the note to the extent of the amount adjudged against her, and no more, and in that respect the judgment is affirmed; it is likewise affirmed as to the adjudication in reference to Mrs. Finley's right to hold the property described in her schedule as exempt from sale on execution. There was no evidence to support the findings of the court in the attachment proceedings, that the Finleys, or either of them, were residents of Indiana, and the judgment in so far as it rests on such finding is reversed. As heretofore indicated, the law does not warrant the rendition of so much of the judgment as declares the lots held by the Finleys, by entireties, as exempt from levy on the writ of attachment in this suit, and not liable to execution under the judgment, and, in such respects the judgment is reversed. The trial court is ordered to modify the judgment on the note, as heretofore indicated; to strike out the portion thereof relating to the proceedings in attachment and garnishment and to adjudge that the attached property, which was owned by the Finleys, as tenants by entireties, be ordered sold, on execution, as in other cases, to satisfy the judgment as rendered against both the Finleys, and that plaintiff recover from the garnishee defendant the amount indicated in its answer; that so much of the judgment be stricken out as decrees that the lots held by entireties are free from levy in attachment and execution under judgment, and that all further proceedings be had in accordance with this opinion.

Note.—Reported in 103 N. E. 110. See, also, under (1) 21 Cyc. 1316, 1457; (2) 21 Cyc. 1578; (3) 4 Cyc. 566; 21 Cyc. 1586; (4) 3 Cyc. 348; (5) 4 Cyc. 433; (6) 4 Cyc. 432; (7) 18 Cyc. 1380; (8) 18 Cyc. 1406; (9) 18 Cyc. 1407; (10) 3 Cyc. 447. As to what is non-residence for the purpose of attachment, see 19 L. R. A. 665.