PFEIFER, Respondent, v. SHEEHAN SADDLERY COM-
PANY, Appellant.

(189 N. W. 310.)

(File No. 5024. Opinion filed July 8, 1922.)

1. **Attachments — Non-residents — "Residence," Distinguished from "Domicile"—Attachment Law as Involving Actual Residence.**

    While the terms "residence" and "domicile" are sometimes used for synonyms, they are not strictly convertible terms, since, to constitute domicile, fact of residence and intention to remain must concur; and attachment statutes contemplate actual residence without regard to domicile, and a person's domicile may be in one state, his residence in another; following Culhane Adjustment Co. v. Farrand, 34 S. D. 87.

2. **Same—Residence, No Fixed Rule Re for All Cases—Doubtful Question Decided to Secure Rights of All.**

    No fixed and unalterable rule can be laid down governing all cases of residence under attachment law, each case being governed by its own facts; and where question is doubtful decision should be such as to best secure rights of all parties.

3. **Same—Recurring Temporary Absences, Absentee Not Non-resident When.**

    Recurring temporary absences at periodical intervals does not make absentee non-resident within attachment law, unless his stays within the state are so short as to amount only to a succession of visits.

4. **Same—Traveling Agent for Non-resident Concern, Domicile with Resident Parents Where Attached Stock Located, Non-resident Business Address, Checking Account, Casual Visits to Parents, Non-taxpayer There, Effect Re Attachment.**

    Where defendant, through his father as agent, was carrying on a saddlery business at M in this state, but was himself employed and spending his whole time on the road for a concern doing business at F in an adjoining state, at which latter place defendant had a checking bank account and was there registered for military service, was not on school poll or

tax list at M, although the saddlery stock was taxed there, he occasionally visiting his parents there; held, that he was a non-resident of this state and said stock subject to attachment on that ground.

5.  **Same—Pleadings Not in Appeal Record—Defendant's Residence Question Re as Doubtful, Non-reversal of Trial Court.**

Where, upon appeal from an order refusing to vacate an attachment, the pleadings are not in appeal record, this Court having no knowledge as to character of controversy and being unable to judge as to what ruling might best secure rights of all parties, ruling of trial court that defendant was non-resident will not be reversed; since issues may involve questions of fraud of which this Court is not advised.

Anderson, J., taking no part in the decision.

Appeal from Circuit Court, Grant County. Hon. FRANK ANDERSON, Judge.

Action by O. A. Pfeifer, against J. J. Sheehan, Sole Trader under the firm name and style of Sheehan Saddlery Company. From an order refusing to vacate an attachment in the pending suit, defendant appeals.  Affirmed.

*Geo. S. Rix,* for Appellant.

*McNulty & Campbell,* and *R. D. Jones,* for Respondent.

SMITH, J.  Appeal from an order refusing to vacate an attachment.  The attachment was issued upon an affidavit alleging that defendant was "not a resident of this state."  The defendant, J. J. Sheehan, who is appellant here, carried on a retail business in the city of Milbank, in this state, under the name of "Sheehan Saddlery Company," and his contention is that he was and is a resident of Milbank and not a nonresident and for that reason the attachment was wrongfully issued.  In support of his motion to dissolve the attachment, appellant filed numerous affidavits.  His own affidavit states that he is a single man about forty years of age, that he is, and has been for some eight years, engaged in the busines of a traveling salesman; that his parents reside at Milbank; that he has always made and claimed his home to be with them and that he has been absent therefrom only to the extent necessitated by the transaction of his business as a traveling salesman; that his personal effects, except such as he used in the course of his travels, are left at the residence of his parents and that he intends to remain and maintain his residence in

34—Vol. 45, S. D.

Milbank and that he has no permanent business at any other place. Appellant's parents also made affidavits substantially the same.

One Nelson, manager of the North Dakota Harness Company of Fargo, N. D., states that defendant has been employed by his company as a traveling salesman for more than five years last past, and that his territory is the southeast part of North Dakota, the east half of South Dakota, the southwest part of Minnesota, and the northwest part of Iowa, but that the defendant "has always maintained his home and domicile at Milbank, S. D.," and that the company pays his expenses while away from Milbank; that on one occasion he asked defendant to become a resident of Fargo, N. D., but that he refused to change his place of abode. He also states that the checks of the company covering defendant's salary and expenses were always deposited in the First National Bank of Fargo, N. D., but that his post office address has been, and still is, known to be at Milbank. An officer of the First National Bank of Fargo states that defendant had had a checking account at that bank for some five or six years, but has no safety deposit box with said bank, but that checks made to defendant by the North Dakota Harness Company are deposited in his bank. One Hart, a traveling salesman, testifies that he is acquainted with the defendant and has driven with him on several occasions to Milbank during the past year, and has been in his company at Milbank about once a month at dates specified during the year 1921, and that defendant told him his home and place of abode was with his parents at Milbank, but that he traveled out of Fargo, N. D., as a matter of convenience. One Brannon testified that he had seen defendant at Milbank on two of the dates referred to in Hart's affidavit, and the assistant cashier of the Farmers' & Merchants' National Bank of Milbank testified that defendant had left Liberty bonds and had collected his interest thereon at that bank, and has stated his post office address to be Milbank. An officer of the First National Bank of Milbank testified that the defendant had carried a checking account in that bank for several years, and that she saw him in Milbank on one of the dates specified in the affidavit of Hart, and that the post office address left with the bank was Milbank.

Defendant himself also presented another affidavit stating

that any kind of legal process could be served upon him at Milbank, by delivering to, and leaving the same with, his father or mother; that he never voted at any other place than Milbank; that he was at his father's home on the last day of June and the 1st day of July, 1921, and the 24th and 25th days of August, 1921, and transacted business at the bank and other places; that, as a matter of convenience, he makes his headquarters at Fargo, so he may be more readily reached by letter or telegram, Fargo being the most accessible place, and that his business address at Fargo is for convenience; that when he registered at Fargo for service in the army it was because that was the most accessible place that he could be reached,. but that he always maintained his place of abode at Milbank.

His father, J. D. Sheehan, testified that he conducted the business of the Sheehan Saddlery Company at Milbank as agent for defendant, and that taxes upon the stock of goods were paid by defendant. One Johnson, postmaster of Milbank, testified that he received from the government letters of persons subject to income tax, and that defendant is so listed and has paid income taxes at Milbank. The county treasurer of Grant county corroborates the statements as to payment of taxes on the stock of the Sheehan Saddlery Company. The cashier of the First National Bank of Milbank testifies that defendant has been a depositor in the said bank for seven or eight years and transacts business with said bank and has a safety deposit box wherein he keeps papers and other records.

J. D. Sheehan testified that he had in his possession a certificate of stock in the Northern States Power Company, date of May 13, 1921, running to appellant, in which the address of J. J. Sheehan is given as Milbank.

On the contrary, one Cahill, deputy county auditor of Grant county, in which Milbank is situated, testified that she is deputy auditor of Grant county, and has in her possession and under her control the assessor's books and tax lists for the years 1920 and 1921, and also the military list of said county for the years 1920 and 1921, that on the 30th of September, 1921, she made an examination of said records, and that said defendant was not assessed or taxed for school or poll tax for either of said years, and that his name was not on the military lists nor on the poll list of

said county, and that the assessor's books and tax lists contain a list of all the taxable residents of said city.

One Blumquist testified that he is acting city auditor for Milbank and has been for more than two years last past, and has in his possession the poll list and registered list of the electors of said city, that defendant was not a registered elector of said city, and that he did not vote at any election held in said city in the years 1920 and 1921. O. A. Pfeifer testified that in a trial in the circuit court of Grant county at the January, 1921, terms, J. D. Sheehan, father of defendant, testified that J. J. Sheehan lived at Fargo, N. D., where he was employed as a salesman; that affiiant resides and is engaged in business in the city of Milbank; that defendant has not resided at Milbank, and has only been in said city on infrequent occasions for a short time. Robert D. Jones testified that he resides in the city of Milbank; that the defendant has been in said city only infrequently and for short periods of time, and has only made occasional visits with his parents. Dwight Campbell testified he had examined the hotel register at Aberdeen, where defendant stopped, on his travels as a salesman, and knows the signature of said defendant on the hotel register; that the place of residence in said register was sometimes not filled out, but that, when filled out, his residence was given as Fargo.

[1] Discussing attachments on the ground of nonresidence, the law is thus stated in 6 Corpus Juris, 49:

"While the terms 'residence' and 'domicile' are sometimes used as synonymous, they are not, when accurately used, convertible terms, for, to constitute domicile, two things must concur, the fact of residence and an intention to remain. Attachment statutes contemplate actual residence without regard to domicile, and a person may, with regard to the application of an attachment statute, have his domicile in one state and his residence in another."

In Union National Bank v. Finley, 180 Ind. 470, 103 N. E. 110, it was held that one may be a nonresident of the state within the attachment law while at the same time he may be a resident householder within the exemption law, and the status of a resident householder continues until residence outside the state, actual or constructive, is acquired.

In Keller v. Carr, 40 Minn. 428-430, 42 N. W. 292, 293, the court said:

" 'Residence' is an act. 'Domicile' is an act coupled with an intent. A man may have a residence in one state or county, and his domicile in another and he may be a nonresident. of the state of his domicile, in the sense that his place of actual residence is not there. Hence the great weight of authorities hold—rightly so, as we think—that a debtor, although his legal domicile is in the state, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an actual nonresidence, within the meaning of the attachment statute."

[2, 3] It is held, however, that no fixed and unalterable rule can be laid down which will govern all cases and each case must be governed by its own facts, and where the question is doubtful the decision should be rendered to best secure the rights of all parties. Keith v. Stetter, 25 Kan. 100. In 6 Corp. Juris, 52, it is said:

"Recurring temporary absences at periodic intervals do not make the absentee a nonresident, unless his stays within the state are so short in duration as to amount only to a succession of visits."

In Egener v. Juch, 101 Cal. 105, 35 Pac. 432, where an attachment was levied upon the property of a member of a traveling troupe giving theatrical performances in that state, though the defendant was shown to have a legal residence in the city of New York, the court held that defendant was a resident of California within the meaning of the attachment law, and sustained a dissolution of the attachment, the court saying:

" 'The residence referred to by the attachment law is an actual, as contradistinguished from a constructive or legal, residence or domicile,' and we cannot say that the court below was wrong in holding that respondents were not nonresidents within the meaning of the sections of the Code above referred to."

This distinction between domicile and actual residence under attachment laws was recognized by this court in Culhane Adjustment Co. v. Farrand, 34 S. D. 87, 147 N. W. 271.

[4] While it is apparent that appellant, either himself or through his agent, paid local taxes on his saddlery business in the city of Milbank, and has transacted business with banks pre-

sumptively in connection with his business there, such facts have but little weight in determining the question whether appellant is nonresident of this state, for the reason that such property is subject to taxes in the county in which it is situated, and his father as his agent in charge of such business, necessarily must keep an account in one or more local banks.

It is undisputed that appellant spends his entire time on the road as a traveling salesman for a firm whose business is situated in Fargo, N. D., and that his business address is at that city; that he keeps a checking account in a bank at Fargo; that his business headquarters are in said city, where most of his time is spent when not on the road; that he is in the city of Milbank only on his regular business trips, and his visits to his parents' home are casual; that he himself registered at Fargo for military purposes; that he has not been listed as a taxpayer or voter in the city of Milbank, has not voted in said city within two years last past, and has paid no personal taxes there.

[5] The pleadings in this case are not before us as they were before the trial court, and, with no knowledge as to the character of the controversy between the parties, we are not in a position to form any judgment as to what ruling might best secure the rights of all the parties to the litigation. Hence, even though the question of residence within the attachment law be viewed as doubtful, we do not feel at liberty to reverse the ruling of the trial court. The issues may involve questions of fraud of which we are not advised. In Keith v. Stetter, supra, the court says:

"And again, when a man voluntarily places himself in a position where all that is visible and tangible in his life is consistent with either residence or nonresidence, the actual fact as to which depends solely upon his own intent, and there is that in his business transactions which is strongly indicative of fraud, it is the duty of the court to so hold as will best secure and protect the rights of creditors and others having dealings with such party. Whenever the issue comes squarely between a party's secret purpose and the security of creditors, the latter should control."

In view of the record before us and the knowledge of the trial court as to the issue involved, we cannot do otherwise than

affirm the order refusing to vacate the attachment. It will be so ordered.

ANDERSON, J., took no part in this decision.