**IN RE: Lisa Danielle BELL, Debtor.**

**CASE NO. 12–23763**

United States Bankruptcy Court,
N.D. Indiana, Hammond Division.

Signed February 20, 2015

———

Christopher R. Schmidgall, Merrillville, IN, for Debtor.

*MEMORANDUM OF DECISION AND ORDER CONCERNING THE DEBTOR'S CLAIM OF EXEMPTION AND THE TRUSTEE'S OBJECTION TO THAT CLAIM OF EXEMPTION*

J. Philip Klingeberger, Judge United States Bankruptcy Court

Lisa Danielle Bell ("Bell") filed a voluntary petition to initiate Chapter 7 Case Number 12–23763 on October 5, 2012. Stacia L. Yoon was appointed the Trustee in the case ("Trustee"). On September 23, 2013, as Record Number 18, Bell filed an Amended Schedule C in which she asserted exemption under Ind.Code § 24–4.5–5–105(2) in the amount of $1,708.84 with respect to property described as "Wages due and owing for the prior ending October 6, 2013".[1] The Trustee filed an objection to this claim of exemption as Record Number 20 on September 27, 2013, thereby giving rise to the contested matter addressed by this Memorandum of Decision. The parties and the court arrived at a procedure by which the contested matter would be determined, stated in Record Number 26 entered on January 28, 2014. In accord with that order, the parties filed their "Parties Stipulation of Facts and Issue" and their respective legal memoranda. The record was closed for the purposes of determination on May 2, 2014.

Shortly after the closing of the record, it came to the court's attention that the Honorable Harry C. Dees, Judge of the United States Bankruptcy Court for the Northern District of Indiana, South Bend Division, had been successful in obtaining the Indiana Supreme Court's acceptance of a certified question pursuant to Indiana Rule of Appellate Procedure 64(A). The parties

---

1. The word "prior" seems to be a mis-designation; the word "period" was probably intended.

and the court agreed that the exemption issue presented by this contested matter was an appropriate issue for this court's seeking of certification of that issue to the Indiana Supreme Court, which the court effected by the documentation entered into the record on October 30, 2014, as Record Number 43. On December 22, 2014, the Indiana Supreme Court declined to accept the requested certification. This matter is now before this court for determination.

The entire record upon which this matter will be determined, including the issue presented to the court, was stated as follows in the Record Number 25 Stipulation, which—excluding attached exhibits—states:

### STIPULATED FACTS

1. Bell filed her petition on October 5, 2012 under case number 12–23763.

2. Stacia Yoon became the permanent trustee on November 13,2012.

3. At issue is Bell's pay period that ended on Saturday, October 6, 2012 ("Pay Period"); a true and accurate copy of the paystub is attached hereto and is marked as Exhibit "A."

4. Bell did not work on October 6, making the last day she worked in the Pay Period Friday, October 5.

5. On October 12,2012, Bell's employer, Methodist Hospital, automatically deposited Bell's $2,278.45 of wages for the Pay Period into Bell's Chase account ending in # 6385"); a true and accurate copy of the account statement is attached hereto and is marked as Exhibit "B."

### ISSUE

Whether the wages Bell earned prior to filing, but paid by her employer after filing, are exempt under the Indiana Garnishment Statute, I.C. 24–4.5–5–105.

The court has complete statutory and Constitutional authority to determine all issues in this contested matter and to enter a final determination with respect to those issues.

### ANALYSIS

It must first be emphasized that the scope of this decision is limited to the factual circumstances of this case. Those facts are that as of the date of the filing of the Chapter 7 bankruptcy petition, Bell had earned employment compensation in the nature of wages, but those wages had not yet been paid to her by her employer: the wages were still in the hands of the third-party employer. The fact that those wages were deposited into a bank account subsequent to the date of the petition has no bearing on the issues in this contested matter.

Indiana is an "opt out" state for the purposes of determining bankruptcy exemptions under 11 U.S.C. § 522(b)(1) and (2). The issue for determination thus revolves around the intent of the Indiana legislature as to whether or not I.C. 24–4.5–5–105 provides a bankruptcy exemption for property of the debtor/property of the estate [2] in the form of wages earned by a debtor which remain in the hands of the employer on the date of the bankruptcy petition.

Bell's contentions center on the case of *In re Haraughty*, 403 B.R. 607 (Bkrptcy.S.D.Ind.2009). Bell heavily relies upon the determination in that case that the garnishment exemption statute doubling as a bankruptcy exemption statute is compelled by the Constitution of the State

---

**2.** The parties have raised no issue with respect to whether or not the employment compensation at issue constitutes property of the Chapter 7 bankruptcy estate. Were it otherwise, the court would determine that the employment compensation is property of the Chapter 7 bankruptcy estate.

of Indiana. Bell also adds certain policy arguments to her arsenal of support for her position. The Trustee counters in part that *Haraughty, supra,* misapplied Indiana case law to determine the scope of the Indiana Constitution's exemption directives. The Trustee also argues that the federal cases of *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (U.S.1974) and *In re Geise,* 992 F.2d 651 (7th Cir.1993) are analytically opposed to Bell's position, and that the application of the analytical framework of those cases to the issue at hand results in denial of Bell's exemption claim.

Let's start first by setting out the applicable Indiana Statute, which states:

Indiana Code: 24–4.5–5–105

Limitation on garnishment and proceedings supplemental to execution; ...

Sec. 105. (1) For the purposes of IC 24–4.5–5–101 through IC 24–4.5–5–108:

(a) "disposable earnings" means that part of the earnings of an individual, including wages, commissions, income, rents, or profits remaining after the deduction from those earnings of amounts required by law to be withheld;

(b) "garnishment" means any legal or equitable proceedings through which the earnings of an individual are required to be withheld by a garnishee, by the individual debtor, or by any other person for the payment of a judgment; and

(c) "support withholding" means that part of the earnings that are withheld from an individual for child support in accordance with the laws of this state.

(2) Except as provided in subsection (8), the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed:

(a) twenty-five percent (25%) of his disposable earnings for that week; or

(b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 US. C. 206(a)($l$) in effect at the time the earnings are payable;

whichever is less. In the case of earnings for a pay period other than a week, the earnings shall be computed upon a multiple of the federal minimum hourly wage equivalent to thirty (30) times the federal minimum hourly wage as prescribed in this section.

The following provision of the Indiana Constitution is also in play:

Indiana Constitution, Article I, Section 22. Debts—Imprisonment exemption

Section 22. The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud.

The Supreme Court of Indiana has a long history of addressing the scope of Indiana's Constitution in relation to exemptions of property from the reach of creditors.

Years and years ago, a hot issue appears to have been whether a creditor who received a judgment in Indiana against an Indiana resident could avoid Indiana exemption laws by registering the judgment in a state in which the debtor's property (exempt under Indiana law) was located, but in which the property was not exempt. This issue became so important that it was the subject of a criminal statute ultimately enacted by the Indiana Legislature, which made it a crime to engage in this practice.

This practice was an issue in the case of *Kestler v. Kern,* 2 Ind.App. 488, 28 N.E. 726, 727 (1891), in which a creditor had registered an Indiana judgment in Kentucky, and then sought to garnish wages (exempt under Indiana law) earned by the debtor in Kentucky. The Indiana Court of Appeals addressed the importance of exemptions in the context of allowing a debtor at least the minimal assets available for sustaining himself and his family, as follows:

> In the case before us the first question to be settled in logical order is, do the facts set out in the complaint constitute a legal injury? Under the common law, if a debtor had two cloaks, one could be seized and sold for his debt, without regard to his necessities, or the necessities of those dependent upon him for support. When this rigid and uncharitable rule began to give way to a nobler sentiment of benevolence, in the form of constitutional and statutory provisions designed to protect the debtor, and those relying upon him for maintenance, from absolute want and destitution, it was regarded as an epoch in our jurisprudence marking the entrance of humanity into a higher civilization; and now every nation on the globe, which lays any claims to a respectable order of civilization, has provisions, more or less adequate, for the relief of the debtor and his family. The right to a reasonable amount of property exempt from seizure or sale for the payment of debt is vouchsafed by the constitution of this state, and the laws which have been enacted to secure this right to the debtor have been and are, it may be said to the credit of our institutions, especially favored in the administration of justice. They have been characterized by the courts as "humane," "beneficent," "benevolent," and "benign," and they have uniformity been interpreted with great liberality in favor of the debtor.

In commenting upon the judgment collection proceeding before it, the court quoted from *Wilson v. Josephs,* 107 Ind. 490, 8 N.E. 616 (1886), as follows:

> It is now firmly settled in this country that a debtor may enjoin his creditor from sending a claim into another jurisdiction for the purpose of evading the exemption laws of the state where they reside, and of collecting the claim from property exempted by the laws of the home state, whether it is prohibited by the penal laws or not. *Cole v. Cunningham,* 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890); *Wilson v. Joseph,* supra; *Teager v. Landsley,* 69 Iowa 725, 27 N.W. 739 (1886); *Mumper v. Wilson,* 72 Iowa 163, 33 N.W. 449 (1887); *Keyser v. Rice,* 47 Md. 203 (1887); *Snook v. Snetzer,* 25 Ohio St. 516 (1874); *Engel v. Scheuerman,* 40 Ga. 206 (1869); *Zimmerman v. Franke,* 34 Kan. 650, 9 P. 747 (1886); *Dehon v. Foster,* 7 Allen 57, 89 Mass. 57 (1863). In *Wilson v. Joseph,* Elliott, J., speaking for the court, said: "The object of our exemption laws, as this court has many times declared, is to secure to a resident householder the reasonable comforts of life for himself and his family. This is the doctrine asserted by our organic law and by our statutes. It was to give full and just effect to this humane and benign principle of our law that the legislature enacted a statute making it an offense for any person to send a claim against a debtor out of the state for collection in order to evade our exemption laws. Rev. St. 1881, § 2162. The enactment of which we are speaking is prohibitory in its character, for it is one of the rudimentary principles of the law that a statute making an act a criminal offense prohibits its performance as effectually as if the prohibition were expressed in direct

terms. There can, therefore, be no doubt that our statutory law prohibits a creditor from evading our exemption laws by sending his claim to a foreign jurisdiction for collection. **The attempt to take from a workman the wages earned by him, by sending the claim to a jurisdiction where our exemption laws will not avail him, is one that the courts will not tolerate. They will, on the other hand, lay the 'strong arm of chancery' upon persons within their jurisdiction, and prevent them from taking away the wages which our constitution and our statute wisely secure to him for the support of his family."** 28 N.E. at 728–729. (emphasis supplied)

While the Trustee argues that *Mims v. Commercial Credit Corporation,* 261 Ind. 591, 307 N.E.2d 867 (1974) [rehearing denied 1974] should be largely disregarded, the court does not agree. The following statement is indicative of the consistent position of Indiana courts, and especially of the Indiana Supreme Court, with respect to the necessary scope of exemptions, including garnishment exemptions:

Garnishment exemption statutes in Indiana have constitutional underpinnings. Article 1, Section 22—Exemption—Imprisonment for debt—provides that foundation:

'The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted . . .'

It is not without significance that Article 1 enumerates the Bill of Rights. *A debtor, in Indiana, has a constitutional right to have a reasonable amount of his or her property exempted from garnishment.* Garnishment exemptions merely implement that right. *Mims,* at 595. (emphasis supplied).

In *In the Matter of Zumbrun,* Ind., 626 N.E.2d 452, 455 (1993), the Indiana Supreme Court discussed the history of Article 1, Section 22 of the Indiana Constitution. While admittedly not directly on point with respect to the issue in this case, the following statement evidences the importance which the Indiana Supreme Court has placed on the Constitutional directive concerning exemptions:

Like the delegates of 1850, this Court has acknowledged that the various statutes adopted over the years fixing the dollar amount of exemptions represented a policy balancing the interests of lender and debtor. "It has been uniformly held in this State that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and that it was not along for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed." *Pomeroy v. Beach (1898),* 149 Ind. 511, 515, 49 N.E. 370, 372 (citations omitted). This liberal construction has typically meant construction in favor of the debtor. *Union Natl. Bank v. Finley (1913),* 180 Ind. 470, 103 N.E. 110. *This rule of liberal construction, of course, has been used in deciding how to apply a given statute to a particular set of facts.* (emphasis supplied).

█ As the foregoing statement establishes, the issue of whether an exemption statute applies to a circumstance is to be addressed liberally in favor of the Constitutional directive in favor of debtors.

This court has adopted the Indiana Supreme Court's clear statements of liberality concerning construing exemptions, as stated in *In Re Wandrey,* 334 B.R. 427, 431–432 (Bkrptcy.N.D.Ind.2005):

Finally, Indiana courts have clearly enunciated standards for review of statutes which provide exemptions, including statutes which provide exemption of assets from creditor process, particularly exemptions which provide availability of assets for a debtor's family. As stated in *Pomeroy v. Beach,* 149 Ind. 511, 49 N.E. 370, 372 (1898):

Section 22 of article 1 of the constitution imposes upon the legislature the duty to pass laws exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability. The exemption laws of the state in force when the act of 1897 was passed were enacted in compliance with this provision of the constitution. It has been uniformly held in this state that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and it was not alone for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed. *Kelley v. McFadden,* 80 Ind. 536, 538 (1881); *Astley v. Capron,* 89 Ind. 167, 170 (1883); *Butner v. Bowser,* 104 Ind. 255, 3 N.E. 889 (1885); *Junker v. Hustes,* 113 Ind. 524, 16 N.E. 197 (1888); *Chatten v. Snider,* 126 Ind. 387, 389, 390, 26 N.E. 166 (1890), and cases cited; *Bank v. Harris (this term)* 149 Ind. 208, 48 N.E. 856 (1897); 7 Am. & Eng. Enc. Law, 130, 131. In *Chatten v. Snider,* supra, this court said: "It is well settled that exemption laws are to be liberally construed with the view to favoring the judgment debtor, and the exemption is not alone for the benefit of the debtor, but for his family as well, and that such construction should be given thereto as will save the debtor and his family at all times the full exemption which the law bestows."

As further stated in *Union National Bank of Muncie v. Finley,* 180 Ind. 470, 103 N.E. 110, 114 (1913):

The *Constitution of Indiana (article 1, § 22)* enjoined the duty on the General Assembly to enact wholesome exemption laws, and this mandate was obeyed by the enactment of section 745, Burns 1908, which exempts from sale on execution the property of "any resident householder," to the value of $600. These provisions of our Constitution and statute were based on considerations of public policy and humanity; their purpose was not limited to the benefit of the debtor but extended to his family. They have ever been most liberally construed by this court in favor of the debtor. *Pomeroy v. Beach,* 149 Ind. 511, 515, 49 N.E. 370 (1898); and cases cited; *Markley v. Murphy,* 180 Ind. 4, 102 N.E. 376 (1913).

Finally, of more recent vintage is the Indiana Supreme Court's statement in In the *Matter of Zumbrun, Ind., 626 N.E.2d 452, 455 (1993):*

Like the delegates of 1850, this Court has acknowledged that the various statutes adopted over the years fixing the dollar amount of exemptions represented a policy balancing the interests of lender and debtor. "It has been uniformly held in this State that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and that it was not along for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed." *Pomeroy v. Beach (1898),* 149 Ind. 511, 515, 49 N.E. 370, 372 (1898) (citations omitted). This liberal construction has typically meant construction in favor of the debtor. *Union Natl.*

*Bank v. Finley (1913)*, 180 Ind. 470, 103 N.E. 110. This rule of liberal construction, of course, has been used in deciding how to apply a given statute to a particular set of facts.

Bell strongly relies upon decisions of the United States Bankruptcy Court for the Southern District of Indiana, and the Trustee equally strongly seeks to argue against the correctness of those decisions. Without extensively discussing the analysis made by the Honorable Judge James K. Coachys in *In re Haraughty, supra.*, the court endorses his analysis and the determination which he reached. The determination reached in *Haraughty* was also made by the Honorable Anthony J. Metz, III, Judge of the United States Bankruptcy Court for the Southern District of Indiana, in the cases of *In Re Radez*, 2009 WL 1404326 (Bkrptcy.S.D.Ind.2009) and in *In re Hoetmer*, 2011 WL 2893628 (Bkrptcy.S.D.Ind.2011).

Apart from the contentions that Indiana law does not accord the liberality evidenced by the decisions addressed above, and that the cases decided in the United States Bankruptcy Court for the Southern District of Indiana were simply erroneously determined, the Trustee relies in part upon a United States Supreme Court case and a case from the United States Court of Appeals for the Seventh Circuit for support of her position.[3]

Turning first to *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the decision has no direct application to the scope of Indiana exemption law. It must also be noted that any discussion in *Kokoszka* of the wage exemption provision of the Consumer Credit Protection Act as a bankruptcy exemption statute, is *dicta*. The decision's determination is essentially that an income tax refund—although derived from wages—does not constitute wages within the scope of the Consumer Credit Protection Act.

We next turn to *In re Geise*, 992 F.2d 651 (7th Cir.1993). The case has no applicability to interpretation of Indiana law, in that it dealt with exemption laws of the state of Wisconsin. The issue before the court was whether Wisconsin exemption law provided an exemption for a personal injury claim of the debtor. In its analysis, the Seventh Circuit stated that in determining whether or not a specific statute provided a bankruptcy exemption, an important factor is whether or not a statute provides protection from all forms of collection process; *Geise, supra*, 992 F.2d at 659. First, as stated, the analysis in *Geise* is not binding on this court as to any determination with respect to an Indiana exemption. But, let's posit that it is. In support of that analytical application, on page 3 of her memorandum the Trustee cites a number of Indiana exemption statutes for the proposition that those statutes provide exemption from multiple forms of judgment collection, rather than the specific remedy of garnishment. And so, okay, many of them do provide for exemption from things like levy, sale, garnishment, attachment or other legal process—or phrases of similar ilk. But the analysis completely breaks down when one realizes that in Indiana, *the sole collection remedy by which wages of a judgment debtor still in the hands of an employer may be reached is garnishment.* As stated in *Na-*

---

**3.** The Trustee asserts that there are decisions in other courts which have arrived at a determination contrary to that advanced by Bell, e.g. *In re Thum*, 329 B.R. 848 (Bkrptcy.C.D.Ill.2005) and *In re Lawrence*, 219 B.R. 786 (E.D.Tenn.1998). Everyone who does this job is entitled to his or her own opinion, and this court simply doesn't agree with the determinations made in those cases.

*tional City Bank of Indiana v. Morris,* Ind.App., 717 N.E.2d 934, 938 (1999):

> The term "levy" means to "exact," "collect," or "seize." BLACK'S LAW DICTIONARY 816 (5th ed.1979). "Execution" refers to "a process in action to carry into effect the directions of a decree or judgment." *Id.* at 510. Execution upon a money judgment is "the legal process of enforcing the judgment usually by seizing and selling property of the debtor." *Id.* "Garnishment" is "a statutory proceeding whereby [a] person's property, money, or credits in possession or under control of, or owing by, another are applied to payment of [the] former's debt to third person by proper statutory process against debtor and garnishee." *Id.* at 612 (5th ed.1979). "Garnishment" is also defined as "[a]n ancillary remedy in aid of execution to obtain payment of a judgment. It is an incident to or an auxiliary of judgment rendered in [the] principal action, and is resorted to as a means of obtaining satisfaction of judgment by reaching credits or property of judgment debtor." *Id.*

The primary remedies for collection of a debt, including a judgment debt, are the subject of Rule 69 of the Indiana Rules of Trial Procedure, which will not be set out here. Those remedies are an execution sale, foreclosure of liens upon real estate, and proceedings supplemental to execution. Execution involves the sheriff of a county taking into possession non-exempt property which may be sold at an execution sale, with the proceeds then being applied toward the debt. We can all agree that wages subject to garnishment are not subject to execution. Wages are also are not subject to foreclosure with respect to a judgment lien. We can also all agree that garnishment is implemented by means of a proceeding supplemental to execution. As a result, the *only remedy* by which a creditor can reach wages of a judgment debtor still in the hands of the employer is by means of garnishment, and it is precisely this collection remedy for which I.C. 24–4.5–5–105 provides an exemption. That statute is therefore just as much an exemption statute under the *Geise* analysis as are the statutes designated by the Trustee on page 3 of her memorandum.

The ultimate fallacy in the Trustee's position is the following analysis. Very, very clearly, the garnishment exemption decreed by I.C.24–4.5–5–105 is underwritten by Indiana's Constitution, and has been endorsed as such by the Indiana Supreme Court for well over a century. No matter how many creditors a debtor who is not in bankruptcy has, the maximum amount of periodic wages which may be reached by all general creditors is set by the statute. Very, very clearly, in accord with the Constitutional directive, the Indiana legislature has determined that the exempted amount of garnishable periodic wages is necessary for the expenses of ordinary life for the judgment debtor, and/or his/her family and/or dependents. So then, the same judgment debtor protected by the garnishment exemption files a Chapter 7 bankruptcy case. If not for that filing, the exemption would very, very clearly apply. The reasons for the exemption haven't changed in relation to the debtor. The Trustee's argument is that the Indiana legislature intends to strip the debtor of the garnishment exemption *solely because* the debtor filed a bankruptcy case. Putting aside the complex Constitutional equal protection issues raised by this construction of the statute, it is *very certain* that the Indiana legislature intended no such result. The State of Indiana doesn't imprison debtors for filing a bankruptcy case, and the State of Indiana doesn't deny the necessaries of ordinary life to debtors obtainable with exempted periodic wages because they filed a bankruptcy case.

Based upon the foregoing, the court determines that I.C. 24–4.5–5–105 provides an allowable exemption to Bell with respect to wages she earned prior to the petition date which had not been paid to her as of the petition date. Bell's claim of exemption with respect to wages earned prior to the petition date but unpaid as of the petition date is sustained, and the Trustee's objection to that exemption is denied.

IT IS ORDERED, ADJUDGED AND DECREED that the exemption claim by Bell in her Amended Schedule C pursuant to Ind.Code § 24–4.5–5–105 is sustained.[4]

---

4. The Trustee's Record Number 20 objection is broad, and can be interpreted to object both to a claim of exemption as a matter of law, and also as to the amount claimed if the exemption is allowed. The issue which this Memorandum of Decision determines is allowance of exemption under I.C. § 24–4.5–5–105 as a matter of law, and it does not finally and conclusively determine the amount of the exemption. There also appears to be no dispute between the parties that the amount of the earned but unpaid wages which is not exempt is property of the Chapter 7 bankruptcy estate and should be turned over to the Chapter 7 Trustee. Before we get involved in another potential stage of contested litigation, a hearing will be held on **March 20, 2015, at 9:00 A.M.,** to address any other lingering issues with respect to the amount of earned but unpaid wages to be paid to the Trustee as property of the estate.