**In The Matter of Brian Lee ZUMBRUN, Judy Kay Zumbrun, Debtors.**

**No. 02S00–9304–CQ–422.**

Supreme Court of Indiana.

Dec. 29, 1993.

Todd R. Simonson, Downers Grove, for debtors.

Donald M. Aikman, Fort Wayne, for trustee.

SHEPARD, Chief Justice.

Until recently amended, Indiana's statutes exempting property from execution protected all of a debtor's funds held in retirement accounts regardless of the value. We hold that such an open-ended exemption of intangible assets is contrary to Article 1, Section 22 of the Indiana Constitution.

This case is before us as a certified question from the United States District Court for the Northern District of Indiana, Fort Wayne Division. Brian Lee Zumbrun and Judy Kay Zumbrun were debtors in a Chapter 7 bankruptcy action in the Bankruptcy Court for the Fort Wayne Division. When the bankruptcy petition was filed on July 26, 1991, the Zumbruns owned an individual retirement account at Star Financial Bank valued at $3600. The Zumbruns contributed all of these funds; none had come from an employer.

The Zumbruns filed with the Bankruptcy Court a schedule of exempt property on which they listed the IRA. They contended it was protected under Indiana's exemption law, which then exempted: "An interest the judgment debtor has in a pension fund, a retirement fund, an annuity plan, an individual retirement account, or a similar fund, either private or public." Ind.Code Ann. § 34–2–28–1(a)(6) (West Supp.1991).[1] The bankruptcy trustee objected to this claim of exemption. He contended among other things that the statute in question violated Article 1, Section 22 of the Indiana Constitution, which reads in part: "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability...."

To resolve this objection the District Court has certified the following question:

Does Indiana Code 34–2–28–1(a)(6) violate Article I, Section 22 of the Indiana Constitution by failing to impose any limitation upon the dollar value or amount of the property which may be exempted and/or by failing to contain any requirement that the exempted property have a reasonable relation to the needs of the debtor for the support of himself and his family?

We conclude that this question should be answered in the affirmative, based on the history of the adoption of Section 22, the subsequent judicial interpretations of Section 22, and the more than 100 years of legislative enactments under its authority.

■ The meaning of Section 22 is illuminated by the long and impassioned debate in the convention that finally proposed the section for ratification as part of the Indiana Constitution of 1851.[2] One of the motivations of the delegates favoring the provision was the concern that without an exemption requirement in the constitution, such statutes would be adopted and repealed on an uncertain basis.[3] Those

---

1. In 1993, the Indiana General Assembly repealed this subsection as it existed and replaced it with a provision exempting only certain types of funds. It also placed a cap on the exemption. 1993 Ind.Acts 4069 (P.L. 208–1993).

2. *See, e.g.,* 1 *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana, 1850,* 748 (H. Fowler, official reporter, 1850) [hereinafter *Debates*]. Exemption clauses appeared elsewhere in state constitutions of the era. Our

provision was taken from the Wisconsin Constitution. Remarks of Delegate Smith of Ripley, 2 *Debates* 1931.

3. *See, e.g.,* 1 *Debates* 766 (remarks of delegate Howe) ("[P]lace [the] measure in the organic law, where it may forever remain, beyond the reach of fluctuating legislation. If left to the Legislature a homestead exemption may be placed on the Statute Book this year, and repealed the next; all will be unfixed and uncertain.").

against the provision argued that liberal exemptions would hurt the poor by making it harder for them to obtain credit.[4] Proponents responded that exemption statutes of the sort they envisioned benefit debtor and creditor alike.[5]

Most importantly for our purposes, however, proponents and opponents alike clearly contemplated that the provision would oblige the legislature to enact statutes specifying the amount of exemption. This premise was ordinary enough, given the experience delegates had with exemption statutes. Exemption statutes of that era, like those of today, specified the amounts or items which were exempt. At the time of the convention, for example, our law permitted an exemption of $125 in personal property. *See*, 1 *Debates* 748.

There was a determined minority of the delegates who favored adding to the Bill of Rights provisions which would protect a debtor's homestead [6] or a debtor's farming implements.[7] Many of the delegates referred to the various proposals for additions to Section 22 as the "homestead exemptions." The major struggle, however, centered on whether to specify a dollar amount of exemption in the constitution itself. The proponents of Section 22 led a determined fight to write a dollar amount into the constitution. *See* 1 Debates 776 ($500); 1 Debates 776, 795 ($400); 1 De-

bates 796 ($300). While exemption proponents did not prevail on these specific proposals, it was clear that all the delegates conceived of the exemption laws governing personal property as laws which exempted particular dollar amounts. Even delegates who opposed placing Section 22 in the constitution agreed that Section 22 as finally adopted required a fixed amount. Remarks of Delegate Smith of Ripley, 2 *Debates* 1930 ("But the *reasonable amount*, when you come to legislate upon this section, must, in the eyes of the Legislature, be constructed to mean *only* the *necessary amount* of food and clothing to render him comfortable, and that amount must be reasonable").

Moreover, it was plain that the section finally enacted was deemed to mandate the legislature. "We are dictators to the Legislature. This is the very business for which we have been chosen." Remarks of Delegate Kelso, 1 Debates at 792.[8]

The General Assembly accepted the new mandate promptly. At the first session of the General Assembly following the adoption of the new constitution, the legislature adopted a law exempting $300 in property from seizure to pay debt. 2 Rev.Stat. 1852 p. 337. This Court has understood this statute and its successors as actions pursuant to the mandate of Section 22, though

**4.** "But those who with me, see in a healthy credit system the means by which the poor man may be raised from poverty to wealth—the means by which indigent artizans [sic], farmers, and laborers may in a few short years, be placed above penury and want—such, will look [u]pon the adoption of these amendments as the death knell to all their hopes for the poor." Remarks of Delegate Hovey, 1 *Debates* 752.

**5.** "I shall contend that the Homestead Exemption is a measure that injures no class, but that, on the contrary, will prove beneficial to the CREDITOR generally, to the DEBTOR, and to the STATE." Remarks of Delegate Colfax, 1 Debates 747.

**6.** "Can there, sir, be anything unjust or improper or unwise, in providing that every man should have a Home—a little, humble home—exempt from legal process—that he and his could call their own, beyond all contingency, secured beyond accident or misfortune?" Remarks of Delegate Colfax, 1 Debates 748.

"Finally, Mr. President, is this lovely land of ours, where the air is made vocal with the sound of independence, is it not pitiable, indeed, that the laborer, from whom we receive the bread we eat, or the raiment we put on—is it not pitiable, indeed, that this man should be denied a spot of earth, whereon to stand and assert his independence, and, having asserted it, maintain it against all invasion." Remarks of Delegate Murray, 1 Debates 720–21.

**7.** Remarks of Delegate Murray, 1 *Debates* 791.

**8.** Many delegates objected to dictating to the legislature the precise way in which to do this. *See, e.g.*, Remarks of Delegate Blythe, 1 Debates 721 ("I am in favor of a liberal exemption of property from execution. But that is, in my humble opinion, the legitimate work of the Legislature, and there I would leave it."). Other pointed out the legislature had not carried out some of the specific mandates of the Indiana Constitution of 1816. Remarks of Delegate Walpole, 1 Debates 762.

we have observed that the section is not self-executing, meaning that it "requires the action of the law-making power to give it active vitality, in pursuance of which, the statute of exemption above referred to was adopted." *Green v. Aker* (1858), 11 Ind. 223, 225.

■ Like the delegates of 1850, this Court has acknowledged that the various statutes adopted over the years fixing the dollar amount of exemptions represented a policy balancing the interests of lender and debtor. "It has been uniformly held in this State that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and that it was not along for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed." *Pomeroy v. Beach* (1898), 149 Ind. 511, 515, 49 N.E. 370, 372 (citations omitted). This liberal construction has typically meant construction in favor of the debtor. *Union Natl. Bank v. Finley* (1913), 180 Ind. 470, 103 N.E. 110.[9] This rule of liberal construction, of course, has been used in deciding how to apply a given statute to a particular set of facts. Such rules do not aid in deciding the constitutionality of a statute.

■ We draw several conclusions about the requirements of Section 22 from the history of its adoption, the subsequent statutes, and our own case law. First, Section 22 commands the legislature to enact exemptions. Second, Section 22 requires statutes which define the exemptions in reasonably tangible ways so as to balance the interests of lenders and debtors. Third, statutes which create unlimited exemptions are inconsistent with the directive of Section 22 and the balanced policy underlying it.[10]

The statute under consideration did precisely that. It exempted an unlimited amount of intangible assets from execution to pay legitimate debts, making it possible to closet virtually every liquid asset possessed by a debtor simply through placing the assets in some form of retirement instrument.

Accordingly, we hold that Indiana Code § 34-2-28-1(a)(6) as it existed at the time of the Zumbrun bankruptcy was unconstitutional.

DeBRULER and GIVAN, JJ., concur.

DICKSON and SULLIVAN, JJ., dissent with separate opinions.

DICKSON, Justice, dissenting.

The majority opinion has, in effect, revised Article 1, Section 22 of the Constitution of Indiana to read:

> The privilege of the debtor to enjoy *no more than* the necessary comforts of life, shall be recognized by wholesome laws, exempting *only* a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted; . . . .

Ind. Const. art. 1, § 22 (emphasized words not in original).

As originally framed and ratified, this provision required only the enactment of minimum reasonable exemption laws. It did not impose any maximum limitation upon the power of the Indiana General Assembly to enact generous exemption laws. Section 22 expressly recognizes the "privilege of the debtor to enjoy the necessary comforts of life," not the "privilege of the creditor to collect all debts in excess of a debtor's necessary comforts of life."

---

9. We have taken this approach notwithstanding some difficulty deciding whether exemption statutes contravene the common law. *Compare Kelley v. McFadden* (1881), 80 Ind. 536, 538 ("[Exemption] statutes are not in contravention of the common law.") and *Chatten v. Snider* (1890), 126 Ind. 387, 390, 26 N.E. 166, 167 ("The right of exemption did not exist at common law.").

10. The Minnesota Constitution likewise says "a reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability." Art. I, sec. 12. A Wisconsin statute similar to the one under consideration here has been declared unconstitutional. *In re Netz,* 91 B.R. 503 (Bkrtcy.D.Minn.1988).

The Indiana citizens whose ratification vote gave life to our state constitution were not voting to ratify individual speeches of particular delegates at the Constitutional Convention. Instead, they were approving the express language of the constitution as adopted by our convention delegates. The language of Section 22 is clear and unambiguous. I cannot agree that the framers and ratifiers intended to approve the version preferred by the majority today. The duty and function of this Court is to uphold our constitution as enacted, not to alter its clear and unambiguous provisions to conform with our beliefs about the policies possibly favored by some of the delegates to the convention.

The majority opinion further contradicts our obligation of judicial restraint. A statute may not be declared unconstitutional simply because a majority of the court considers it unwise or undesirable. *Johnson v. St. Vincent Hosp., Inc.* (1980), 273 Ind. 374, 382, 404 N.E.2d 585, 591. All reasonable doubts must be resolved in favor of a statute's constitutionality. *North Township Advisory Bd. v. Mamala* (1986), Ind., 490 N.E.2d 725, 726. When a statute can be construed to support its constitutionality, such construction must be adopted. *Miller v. State* (1987), Ind., 517 N.E.2d 64, 71.

I therefore dissent from the majority's declaration that Indiana Code § 34–2–28–1(a)(6) was unconstitutional as a violation of Article 1, Section 22 of the Indiana Constitution.

SULLIVAN, Justice, dissenting.

I agree with Justice Dickson that the plain wording of Article I, Section 22, does not mandate that the Legislature limit the amount of property exempt from creditors' claims; rather, it mandates that the Legislature exempt at least a reasonable amount. I find nothing in the majority's discussion of the constitutional debates inconsistent with this reading of the section. I therefore respectfully dissent from the majority's opinion that Ind.Code § 34–2–28–1(a)(6), as in effect on July 26, 1991, was unconstitutional.