In re David A. STINNETT, Debtor.

David A. Stinnett, Appellant,

v.

R. Stephen LaPlante, Appellee.

United States of America, Appellant,

v.

R. Stephen LaPlante, Trustee, David A. Stinnett, and Guardian Life Ins. Co., Appellees.

David A. Stinnett, Appellant,

v.

R. Stephen LaPlante, Trustee, United States of America, Guardian Life Ins. Co., Appellees.

Nos. 3:03–CV–168–RLY–WGH, 3:03–CV–116–RLY–WGH.

United States District Court, S.D. Indiana, Evansville Division.

Jan. 18, 2005.

Order Granting Partial Rehearing Feb. 24, 2005.

James Stanley Kowalik, Hostetler & Kowalik, Jeffrey L. Hunter, United States

Attorney's Office, Indianapolis, IN, for appellee.

Harry L. Mathison, King Deep & Branaman, Henderson, KY, for appellant.

Karen A. Smith, Bonni Jessica Perlin, Peter Sklarew, Tax Division, U.S. Department of Justice, Washington, DC, for appellee.

Alexander H. Whiteaker, Guardian Life Insurance Co. of America, New York City, for appellee.

## ENTRY ON APPEALS OF DAVID STINNETT AND ON APPEAL OF UNITED STATES OF AMERICA

YOUNG, District Judge.

This case is before the court on various appeals taken from bankruptcy proceedings in the matter of debtor David A. Stinnett ("Stinnett"). *In re Stinnett,* Cause No. 00–70768–BHL–7A (Bankr. S.D.Ind.2003). One appeal was filed by Stinnett based on the bankruptcy court's September 12, 2003 Order ("the September 12 Order"). It has been assigned cause number 3:03–cv–168–RLY–WGH in this court. The other two appeals were filed based on the bankruptcy court's June 26, 2003 Order ("the June 26 Order"), which addressed adversary proceeding number 02–7003. The first of these two, originally given the cause number of 3:03–cv–120–RLY–WGH in this court, was filed by the United States of America ("the government"). The government's appeal has since been consolidated into the second appeal from the June 26 Order, cause number 3:03–cv–116–RLY–WGH, which was filed by Stinnett. The three appeals are considered together here because they arise out of the same underlying circumstances. For the following reasons, the bankruptcy court's September 12 Order is affirmed and its June 26 Order is **affirmed in part** and **reversed in part.**

## I. Background

For some time prior to 1994, Stinnett was employed by Northwestern Life Insurance Company ("Northwestern"). His employment with Northwestern was terminated in 1994. In the fall of 1995, Stinnett began receiving monthly disability payments of approximately $11,400 from Northwestern because he suffers from severe depression. The Northwestern disability payments have continued to the present day.

In November 1994, Stinnett began working for The Guardian Life Insurance Company ("Guardian"). On May 26, 2000, Stinnett filed for bankruptcy in the Southern District of Indiana. Stinnett continued to receive his salary from Guardian until May 31, 2000. In July 2001, Stinnett sought an award of disability benefits from Guardian, retroactive to 1995. Guardian denied his claim for the period during which Stinnett had been receiving his salary but granted him long-term disability benefits of approximately $10,000 per month, backdated to June 1, 2000 (the date on which he stopped receiving salary). Thus, since October 2001, both Northwestern and Guardian have been making disability payments to Stinnett.

As Stinnett's bankruptcy case proceeded, Trustee R. Stephen LaPlante ("LaPlante" or "Trustee") filed an adversary proceeding (No. 00–7039), asking the bankruptcy court to have Northwestern turn over the disability benefits generated under its policy to LaPlante, rather than giving them to Stinnett. In turn, Stinnett claimed that the Northwestern payments were exempt from the bankruptcy proceedings pursuant to I.C. 27–8–3–23(b).[1]

---

**1.** There are multiple references in Stinnett's     appeal to I.C. 27–8–2–23, a statute which

Ind.Code Ann. 27–8–3–23(b) (West 2004) ("I.C.27–8–3–23"). On March 4, 2002, the bankruptcy court entered an order ("the March 4 Order") whereby Stinnett was only allowed to exempt $6,000 per month of his disability payments. The March 4 Order also stated:

> The Court finds that the debtor's current monthly income from the Guardian disability insurance policy shall be retained by the debtor until such further time as the Court makes a determination as to the ownership of such asset. Because the proceeds from the Guardian policy exceed the reasonable personal living expenses of the Debtor, the Northwestern policy proceeds, above the amounts paid to the former spouse, will be retained by the Trustee.

The bankruptcy court separately addressed the Guardian policy in its September 12 Order. The September 12 Order explained that the disability payments were partially exempt, to the extent of $6,000 per month, total, of the approximately $21,400 that the combined Northwestern and Guardian policies were paying out. The bankruptcy Trustee was entitled to the remainder of the payments, once Stinnett received his $6,000 per month and his ex-wife received her share of the payments. On September 19, 2003, Stinnett filed a notice of appeal from the September 12 Order, claiming that the disability payments were exempt in full pursuant to I.C. 27–8–3–23; this is one of the appeals before the court today. LaPlante initially responded to Stinnett's appeal with a motion to dismiss which this court has since denied.

Meanwhile, the other two appeals were making their way up to this court from the bankruptcy court. In these appeals, Stinnett, LaPlante, and the government are all claiming an interest in the Guardian disability payments. The June 26 Order held that "the Guardian insurance policy became property of the estate on the date of filing and that the subsequent disability benefits qualify as proceeds under 11 U.S.C. § 341(a)(6) [sic, referring to 11 U.S.C. § 541(a)(6)]." LaPlante now defends the bankruptcy court's decision to direct Guardian's payments to the Trustee.[2]

Stinnett argues in his appeal that because he was not entitled to receive the Guardian payments until after he filed his Chapter 7 Petition for Relief, those payments are not subject to inclusion in his income for the purpose of determining exemptions under I.C. 27–8–3–23. Alternatively, the government argues in its appeal that the Guardian disability payments are proceeds of pre-petition property rights and, as such, are subject to pre-petition tax liens that were assessed against Stinnett by the Internal Revenue Service. As the June 26 Order explains, on June 3, 1996, a delegate of the Secretary of the Treasury made an assessment against Stinnett for $511,872.69 in unpaid federal income taxes. On June 2, 1997, an additional assessment of $282,440.83 was made against Stinnett. These assessments gave rise to federal tax liens that attached to all of Stinnett's property and rights to property, pursuant to 26 U.S.C. § 6321.

To clarify, there are three different orders from the bankruptcy court at issue here. In chronological order, the first is

---

does not exist. *See, e.g.,* Brief of Appellant David A. Stinnett, cause no. 3:03–cv–168–RLY–WGH at 1, 4. The court presumes that those references are meant to be to I.C. 27–8–3–23.

2. Note that the appeals taken from the June 26 Order only have to do with the Guardian payments, whereas the appeal from the September 12 Order has to do with both the Guardian and the Northwestern payments.

the March 4 Order, which determined Stinnett's reasonable living expenses to be $6,000 per month. The second is the June 26 Order, which held that the Guardian disability policy "became property of the estate on the date of filing and that the subsequent disability benefits qualify as proceeds" under 11 U.S.C. § 541(a)(6). The third is the September 12 Order, which held that Stinnett is not entitled to any additional exemption under the Guardian policy, beyond the already determined $6,000 per month. The September 12 Order indicated that Trustee LaPlante would receive the Northwestern and Guardian disability payments, and that he was to forward $6,000 per month of the payments to Stinnett, to cover Stinnett's reasonable living expenses. The first appeal discussed below is Stinnett's appeal from the September 12 Order. The second and third appeals discussed below are the cross-appeals filed by Stinnett and by the government following the June 26 Order.

## II. Standard of Review

■ This court reviews the bankruptcy court's findings of fact under the clearly erroneous standard. Fed.R.Bankr.P. 8013. The facts of this case are largely undisputed. The bankruptcy court's conclusions of law are reviewed de novo. *See, e.g., In re Longardner & Associates, Inc.,* 855 F.2d 455, 459 (7th Cir.1988).

## III. Stinnett's Claim that the Disability Payments are Exempt in Full

■ The September 12 Order limited the total amount of the exemptions Stinnett could receive for the Northwestern and Guardian disability payments to $6,000 per month. On appeal from that Order,

Stinnett first argues that the language of I.C. 27–8–3–23 does not limit the amount of disability payments that can be exempted from bankruptcy proceedings and, as such, his disability payments are exempt in full. (Brief of Appellant David A. Stinnett, cause no. 3:03–cv–168–RLY–WGH ("Stinnett's Brief") at 4). The statute reads, in relevant part:

(a) As used in this section, 'premium' includes any deposit or contribution.

(b) The money or benefit provided or rendered by any corporation, association, or society authorized to do business under this chapter shall not be liable to attachment by garnishee or other legal process, and shall not be seized, taken, appropriated, or applied by any legal or equitable process, nor by any operation of law, to pay any debt or liability of a policy or certificate holder or any beneficiary named therein . . .

I.C. 27–8–3–23. LaPlante responds that I.C. 27–8–3–23 facially violates the Indiana constitution,[3] both because of its unlimited dollar amount and because the statute does not limit the type of consideration received from the mutual benefit companies that are the subject of I.C. 27–8–3. (Trustee's Appellee's Brief, cause no. 3:03–cv–168–RLY–WGH ("LaPlante's Brief") at 5–6).

In an Order and Memorandum dated March 19, 2001, the bankruptcy court properly declined to evaluate the abstract, facial constitutionality of the statute, citing the premise that courts must construe statutes to be constitutional when possible. (*In re Stinnett,* Case No. 00–70768–BHL–7, Adv. No. 00–7039, March 19, 2001 Order

---

**3.** LaPlante's argument was based on the provision of the Indiana Constitution that states: "The privilege of the debtor to enjoy the *reasonable* comforts of life, shall be recognized by wholesome laws, exempting a *reasonable* amount of property from seizure or sale . . . ." Ind. Const. Art I, § 22 (emphasis added).

at 5). Instead, the bankruptcy court held that:

> Under the *Foster* precedent, exemption statutes which do not have an upper limit or "cap" are constitutionally suspect. Because in this instance, the challenged statute does not have such a limit, the Court must examine whether the exemption is reasonably necessary as applied to the particular facts of this controversy.

*Id.* (citing *Citizens National Bank v. Foster,* 668 N.E.2d 1236 (Ind.1996)). Following subsequent hearings on Stinnett's reasonably necessary living expenses, the bankruptcy court determined, in its March 4 Order, that $6,000 per month was the appropriate amount for exemption.

The *Foster* case was a follow up to *In re Zumbrun,* 626 N.E.2d 452 (Ind.1993). In *Zumbrun,* the Indiana Supreme Court addressed the unlimited exemption of retirement plan assets from bankruptcy proceedings, and it held that "statutes which create unlimited exemptions are inconsistent with the directive of Section 22 and the balanced policy underlying it." *Id.* at 455. In *Foster,* the Indiana Supreme Court refined its position and replaced the bright-line test of *Zumbrun*—that unlimited exemptions are unconstitutional—with a reasonableness analysis. 668 N.E.2d at 1241. *Foster* held that exemption statutes without upper limits are constitutionally suspect, and as such they trigger an analysis of reasonable necessity. *Id.*

Stinnett's attempt to limit the *Zumbrun* and *Foster* precedents to their very specific factual underpinnings is unpersuasive. Appearing before the bankruptcy court, Stinnett was in the same situation as the *Zumbrun* and *Foster* debtors: he had sources of income that exceeded his reasonably necessary living expenses, and a constitutionally suspect statute allowed him to exempt those payments without limit.

■ Stinnett next argues that the disability payments are exempt in full pursuant to 11 U.S.C. § 541(a)(6), which allows a debtor who has declared bankruptcy to exempt "earnings from services performed" post-petition. Stinnett reasons that because disability payments are awarded to those who are unable to work, the payments take the place of earnings from services performed post-petition. However, 11 U.S.C. § 541(a)(6) exempts only "earnings from services performed," not those that are unperformed, as is the case with disability payments. This court declines, as have others, to extend the statute to cover payments made in lieu of performance. *See, e.g., In re Andrews,* 80 F.3d 906 (4th Cir.1996) (post-petition payments to a debtor made pursuant to a non-competition agreement not covered by 11 U.S.C. § 541 because they are not earnings from services performed); *In re McDaniel,* 141 B.R. 438 (Bankr.N.D.Fla. 1992) (same); *In re Prince,* 85 F.3d 314, 323 (7th Cir.1996) (noting that "courts have interpreted the postcommencement earning exception extremely narrowly," and holding that the value of business goodwill is not exempt); *In re Lerocque,* 164 B.R. 4 (Bankr.D.N.H.1994) (legal settlement covering lost future earnings not exempt); *In re Carson,* 82 B.R. 847 (Bankr.S.D.Ohio 1987) (same). The common theme of all of the cases cited herein is that 11 U.S.C. 541(a)(6) is a narrow statute that only allows the debtor to exempt payments for post-petition services actually performed.

For the foregoing reasons, this court affirms the bankruptcy court's September 12 Order, holding that the exemption of Stinnett's disability payments under I.C. 27–8–3–23 is properly limited by a reasonableness analysis. Furthermore, the

bankruptcy court's factual determination that Stinnett's reasonably necessary living expenses are $6,000 per month is affirmed, as it is not clearly erroneous.

## IV. Stinnett's Claim that the Post–Petition Payments are Exempt

■ Stinnett's second appeal is based on the June 26 Order, wherein the bankruptcy court found that the Guardian disability policy became property of Stinnett's bankruptcy estate on the date of filing, and, therefore, the benefits generated under the policy qualify as proceeds under 11 U.S.C. 541(a). On appeal, Stinnett argues that the disability payments are improperly categorized as part of the estate because he was not entitled to receive the payments at the time of filing.

This second appeal is rendered moot by the decision above. Since Stinnett is only entitled to $6,000 per month, and the Northwestern policy pays out over $11,000 per month, there is no need for Stinnett to claim an interest in the Guardian policy. However, given the possibility that Stinnett will continue to claim such an interest, this court affirms the conclusion of the June 26 Order for the reasons explained therein. The disability payments are "property of the estate" under 11 U.S.C. 541(a).

## V. The Government's Claim to an Interest in the Guardian Payments

The final appeal before this court is the government's appeal from the bankruptcy court's June 26 Order. As discussed above, the proceeds from the Guardian insurance policy are property of the bankruptcy estate. Accordingly, the bankruptcy court ordered that the Guardian proceeds were to be directed to the Trustee. Before the bankruptcy court, the government argued that the proceeds were subject to pre-petition tax liens under § 6321

of the Internal Revenue Code ("I.R.C.") and that they should be directed to the government instead of the Trustee. The bankruptcy court rejected the government's argument because Stinnett did not meet all of the conditions for payment under the Guardian policy "until after the estate had acquired an interest in the policy." (June 26 Order at 11). Contrary to the bankruptcy court's holding, this court finds that the government's lien does attach to the disability payments.

The bankruptcy court's decision—that the government's tax liens did not attach to the Guardian payments—was based on its reasoning that "only if Stinnett had an unqualified right to the disability benefits prior to filing bankruptcy could the tax lien attach." (June 26 Order at 9). The government argues on appeal that the bankruptcy court made two mistakes in reaching its decision: (1) it confused tax liens with tax levies, applying the standard for levies when it should have applied the standard for liens, and (2) it treated the Guardian payments differently under 11 U.S.C. § 541 and I.R.C. § 6321, when it should have treated them consistently.

### A. Liens Versus Levies

There is some ambiguity in the bankruptcy court's June 26 Order, given that it refers to a "notice of levy" being filed when in fact the government filed a notice of lien. (June 26 Order at 9). On appeal, however, the parties and this court agree that a lien is at issue. The remaining question, addressed below, is whether the government's pre-petition tax lien attached to the Guardian disability payments.

### B. Pre–Petition Rights and Post–Petition Proceeds

■ Trustee LaPlante correctly points out that, "had there been no bankruptcy filing, at the time Stinnett began receiving

his disability payments or became entitled to receive the payments ... the Internal Revenue Service's lien would attach." (LaPlante's Brief in Response to the Government's Opening Brief at 8). LaPlante goes on to argue that when Stinnett filed for bankruptcy on May 26, 2000, § 362 of the bankruptcy code created an automatic stay, meaning that no new liens could attach to the estate. 11 U.S.C. § 362 ("§ 362"). The government argues, in turn, that the tax lien was a pre-existing lien, not a new lien, thus the automatic stay created by § 362 does not apply. This court agrees: since the government's tax lien against Stinnett attached to the Guardian payments prior to his petitioning for bankruptcy, the lien was unaffected by § 362.

In *Drye v. United States*, the Supreme Court explained that the important consideration in deciding whether a taxpayer has property rights to which a lien can attach is the "breadth of the control" that the taxpayer has over the property (or right to property). *Drye v. United States*, 528 U.S. 49, 61, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999) (citing *Morgan v. Commissioner*, 309 U.S. 78, 83, 60 S.Ct. 424, 84 L.Ed. 585 (1940)). Under this fact-sensitive analysis, Stinnett had the necessary breadth of control over the Guardian payments. His right to claim the disability benefits had vested pre-petition, because Stinnett was disabled long before he filed for bankruptcy.[4] Stinnett held the "control rein" of the disability payments, as envisioned in *Drye*. *Id.* Because the timing of Stinnett's appli-

cation for the disability payments was well within his own control, the government's lien attached to the payments just as it would to any other property or right to property.

In arguing that the government's lien did not attach, LaPlante cites to *Pansier v. United States*, wherein the court found that a debtor's *unqualified* right to receive payments such as disability benefits prior to filing constitutes a property right under § 6321. 225 B.R. 657, 664 (E.D.Wis.1998). LaPlante argues that, because Stinnett had not made his application and because Guardian had not determined whether he was disabled under the terms of the policy, he did not have an unqualified right to receive the payments. This court is unwilling to interpret the "unqualified" language from *Pansier* as broadly as LaPlante would suggest. The fact that a debtor must complete a routine piece of paperwork in order to receive a disability payment is not a burden sufficiently great to prevent the debtor from having a recognizable property right in the payments. Stinnett's right to receive the payment was not "qualified" in any substantial way; he simply chose to continue receiving his salary in lieu of disability payments.

Similarly, LaPlante cites to *In re Fuller*, for the proposition that pre-petition liens cannot attach to property obtained post-petition. 134 B.R. 945 (9th Cir. BAP 1992). The relevant property in *Fuller* was an inheritance received post-petition by the debtor, which the court held was not subject to the government's tax lien.

---

**4.** Stinnett filed for bankruptcy on May 26, 2000. He did not file for disability payments under the Guardian policy until July 2001. Guardian made retroactive payments, but only to June 1, 2000 (because Stinnett had been receiving salary up to that point). However, Stinnett began receiving payments for the same disability under the Northwestern policy in the fall of 1995. The record reflects

that, while Stinnett was receiving salary from Guardian, he was still impaired by his disability. *See, e.g.,* LaPlante's Brief in Response to the Brief of Appellant David A. Stinnet at 5, 9 (also explaining that Stinnett did not file a claim for Guardian payments back in 1995 because he was advised that the benefits would amount to less than his salary).

*Id.* at 949. Unlike the case at bar, the debtor in *Fuller* presumably could not control the timing of his receipt of the inheritance. Stinnett could and did control the timing of his application for disability benefits, and, thus, the government's lien attached.

## VI.  Conclusion

For the foregoing reasons and based on the record before this court, Stinnett's exemption of his disability payments from the bankruptcy proceedings is limited to $6,000 per month. Also, the Guardian disability payments are property of the bankruptcy estate, and the tax liens asserted by the government against Stinnett have attached to the Guardian payments. Consequently, the bankruptcy court's September 12 Order is **affirmed** and its June 26 Order is **affirmed in part** and **reversed in part**.

Trustee LaPlante is directed to deliver the monthly sum of $6,000 to Stinnett, for so long as LaPlante continues to receive payments from Northwestern under its disability policy. Guardian is directed to deliver all of its future payments under Stinnett's policy to the government.

## ENTRY ON UNITED STATES' MOTION FOR PARTIAL REHEARING

In its entry dated January 18, 2004, this court addressed the above-captioned appeals. *See* docket # 28 of cause no. 3:03–cv–168–RLY–WGH. The matter is now back before the court on the United States' Motion for Partial Rehearing, in which the United States asks the court, pursuant to Bankruptcy Rule 8015, to clarify its January 18 mandate. Stinnett has objected to the rehearing, but the court finds that a clarification and small alteration of its conclusion will be helpful. As such, the United States' Motion for Partial Rehearing is **granted**. The court hereby alters the final paragraphs of its Entry dated January 18 to read as follows: [1]

## VI.  Conclusion

For the foregoing reasons and based on the record before this court, Stinnett's exemption of his disability payments from the bankruptcy proceedings is limited to $6,000 per month. Also, the Guardian disability payments are property of the bankruptcy estate, and the tax liens asserted by the government against Stinnett have attached to the Guardian payments. Consequently, the bankruptcy court's September 12 Order is **affirmed** and its June 26 Order is **affirmed in part** and **reversed in part**.

Northwestern and Guardian shall continue to make all payments to Trustee LaPlante. LaPlante shall continue to deliver the monthly sum of $6,000 to Stinnett for so long as LaPlante continues to receive both payments under the disability policies, except to the extent that the Bankruptcy Court modifies these instructions in a manner that is not inconsistent with today's decision.

This matter is now remanded to the Bankruptcy Court, which is instructed to enter judgment that the tax liens attach to the Guardian disability payments, and for further proceedings consistent with this decision. Nothing in this decision shall be construed to make the United States a party to Stinnett's appeal from the September 12 Order (cause no. 3:03–cv–168–RLY–WGH). The question of any potential relationship between tax liens and the Northwestern disability payments is not

---

1.  The court will also amend its Entry of Final Judgment to remand the case to the Bank-ruptcy Court, in order to be consistent with today's Entry.

before the court today, and the court issues no opinion regarding such question.