**IN RE: Annie P. DAVIS, Debtor.**

**CASE NO. 13–21939 JPK**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Signed March 20, 2015

Lavita R. Ball, Nathan E. Curtis, Law Offices of Peter Francis Geraci, JD, Mariusz K. Zatorski, Geraci Law LLC, Chicago, IL, for Debtor.

*MEMORANDUM OF DECISION
AND ORDER DETERMINING
CONTESTED MATTERS*

J. Philip Klingeberger, Judge, United States Bankruptcy Court

Two interrelated contested matters are the subject of this Memorandum of Decision and Order. The first arises from the Chapter 7 Trustee Stacia L. Yoon's ("Trustee") Record Number 39 objection to the claim of exemption of the debtor Annie P. Davis ("Davis") with respect to life insurance proceeds stated in her amended Schedule C filed as Record Number 34 on February 25, 2014. The second arises from the Trustee's Record Number 32 motion for turnover of life insurance proceeds which are the subject of the claimed exemption, and Davis' Record Number 36 objection to that motion filed on February 25, 2014. This Memorandum of Decision and Order will determine both the contested matters.

The manner of determination of the contested matters was stated in the court's Record Number 42 order entered on May 1, 2014. The order stated that the entire record to be submitted to the court would be that provided by the parties in a Joint Stipulation of Fact, and that then legal memoranda would be submitted by the parties. The parties complied with the order.

The court determines that it has complete Constitutional and statutory jurisdiction and authority to determine all facts and legal issues in both contested matters, and to enter final judgments with respect to both contested matters.

## I. *THE RECORD BEFORE THE COURT*

As provided by the Joint Stipulated Facts' filed as Record Number 47 on July

16, 2014, the entire factual record is the following:

1. On May 30, 2013, Debtor filed her petition for relief under Chapter 7 of the United States Bankruptcy Code.

2. In April 2013, Debtor's spouse passed away.

3. On May 8, 2013, Debtor received $5,000.41 in life insurance proceeds from MetLife for her deceased husband.

4. On May 21, 2013, Debtor received $3,694.28 in life insurance proceeds from AARP Life Insurance Program for her deceased husband.

5. On May 28, 2013, Debtor opened a BMO Harris Bank account ending 7856 and deposited $8,000.69 which was from the $8,694.69 Debtor received from the AARP and Met Life Insurance proceeds.

6. On the petition date, May 30, 2013, Debtor's BMO Harris Bank account ending 7856 had a balance of $8,000.74.

7. On February 25, 2014, Debtor amended her Schedule C with the intention of exempting the $8,000.74 as "Whole Life Insurance Proceeds from deceased husband in Harris Bank Account."

4. The trustee objected to this exemption on the grounds that the $8,000.74 is intangible property subject to a $350.00 exemption limit.[1]

In accord with the Stipulation, the fund at issue is $8000.74 held in Harris bank account number 7856, which was essentially entirely derived from the life insurance policy payments stated in paragraphs 3 and 4 of the Stipulation.[2]

## II. STATEMENT OF ISSUE

With respect to Davis' claim of exemption and the Trustee's objection thereto, the issue is the following:

Under Indiana law, is a death benefit payable to the spouse of a decedent whose life was insured by the life insurance policy from which the death benefit derives exempt from claims of creditors of the surviving spouse only before the benefit is paid by the life insurance company to the surviving spouse, or does the benefit retain exemption from the claims of the surviving spouse's creditors after it has been received by the surviving spouse?[3]

## III. ANALYSIS

■ In this case, the Trustee seeks to recover $8000.74 of life insurance proceeds which Davis received upon the death of her husband for the benefit of Davis' creditors in Case Number 13–21939 by asserting that I.C. 27–1–12–14(e) protects matured life insurance benefits only before those benefits have been paid to the life insurance policy's beneficiary.

The financial circumstances of Annie P. Davis following the death of her husband are not a factor in this decision. This case plays out on a much larger stage. For a significant number of people, benefits paid under a life insurance policy are a big deal, as the law of the State of Indiana so clearly recognizes and protects.

I.C. 27–1–12–14(e) states:

(e) Except as provided in subsection (g), *all policies of life insurance upon the*

---

1. It is obvious that the designation of the final paragraph of the Stipulation is erroneous— that paragraph should be designated as number "8".

2. The 5 cent difference will be subsumed into the amount at issue.

3. The determination of the contested matter concerning the Trustee's objection to Davis' claim of exemption will determine the contested matter with respect to the Trustee's motion for turnover.

*life of any person, which name as beneficiary,* or are bona fide assigned to, *the spouse,* children, or any relative dependent upon such person, or any creditor, shall be held, subject to change of beneficiary from time to time, if desired, for the benefit of such spouse, children, other relative or creditor, free and clear from all claims of the creditors of such insured person *or of the person's spouse;* **and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt or debts of such insured person or of the person's spouse.** (emphasis supplied)

I.C. 27–1–12–14(b) states:

As used in this section, "proceeds or avails" means death benefits, cash surrender and loan values, premiums waived, and dividends whether used in reduction of the premiums or in whatsoever manner used or applied, excepting only where the debtor has, subsequent to the issuance of the policy, actually elected to receive the dividends in cash.

The following provision of the Indiana Constitution provides the foundation for the scope of all Indiana debtors' exemptions:

Indiana Constitution, Article I, Section 22. Debts—Imprisonment exemption

Section 22. The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and there shall be no imprisonment for debt, except in case of fraud.

■ Let's first start with the clear and expansive directives of courts of the State of Indiana, predominantly the Indiana Supreme Court, which establish that exemptions are to be liberally construed and applied for the benefit of not only debtors, but for the benefit of dependents and family of the debtors.

The Indiana appellate courts have a long history of addressing the scope of Indiana's Constitution in relation to exemptions of property from the reach of creditors. The Indiana Court of Appeals addressed the importance of exemptions in the context of allowing a debtor at least the minimal assets available for sustaining himself and his family, as follows in *Kestler v. Kern,* 2 Ind.App. 488, 28 N.E. 726, 727 (1891):

In the case before us the first question to be settled in logical order is, do the facts set out in the complaint constitute a legal injury? Under the common law, if a debtor had two cloaks, one could be seized and sold for his debt, without regard to his necessities, or the necessities of those dependent upon him for support. When this rigid and uncharitable rule began to give way to a nobler sentiment of benevolence, in the form of constitutional and statutory provisions designed to protect the debtor, and those relying upon him for maintenance, from absolute want and destitution, it was regarded as an epoch in our jurisprudence marking the entrance of humanity into a higher civilization; and now every nation on the globe, which lays any claims to a respectable order of civilization, has provisions, more or less adequate, for the relief of the debtor and his family. The right to a reasonable amount of property exempt from seizure or sale for the payment of debt is vouchsafed by the constitution of this state, and the laws which have been enacted to secure this right to the debtor have been and are, it may be said to the credit of our institutions, especially favored in the administration of justice. They have been characterized by the courts as "humane," "beneficent," "benevolent," and

"benign," and they have uniformity been interpreted with great liberality in favor of the debtor.

In *In the Matter of Zumbrun*, Ind., 626 N.E.2d 452, 455 (1993), the Indiana Supreme Court discussed the history of Article 1, Section 22 of the Indiana Constitution. While admittedly not directly on point with respect to the issue in this case, the following statement evidences the importance which the Indiana Supreme Court has placed on the Constitutional directive concerning exemptions:

> Like the delegates of 1850, this Court has acknowledged that the various statutes adopted over the years fixing the dollar amount of exemptions represented a policy balancing the interests of lender and debtor. "It has been uniformly held in this State that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and that it was not along for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed." *Pomeroy v. Beach* (1898), 149 Ind. 511, 515, 49 N.E. 370, 372 (citations omitted). This liberal construction has typically meant construction in favor of the debtor. *Union Natl. Bank v. Finley* (1913), 180 Ind. 470, 103 N.E. 110. *This rule of liberal construction, of course, has been used in deciding how to apply a given statute to a particular set of facts.* (emphasis supplied).

As the foregoing statement establishes, the issue of whether an exemption statute applies to a circumstance is to be addressed liberally in favor of the Constitutional directive in favor of debtors.

This court has adopted the Indiana Supreme Court's clear statements of liberality concerning construing exemptions, as stated in *In re Wandrey*, 334 B.R. 427, 431–432 (Bkrtcy.N.D.Ind.2005):

> Finally, Indiana courts have clearly enunciated standards for review of statutes which provide exemptions, including statutes which provide exemption of assets from creditor process, particularly exemptions which provide availability of assets for a debtor's family. As stated in *Pomeroy v. Beach, Ind.,* 149 Ind. 511, 49 N.E. 370, 372 (1898):

> *Section 22 of article 1 of the constitution* imposes upon the legislature the duty to pass laws exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability. The exemption laws of the state in force when the act of 1897 was passed were enacted in compliance with this provision of the constitution. It has been uniformly held in this state that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and it was not alone for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed. *Kelley v. McFadden,* 80 Ind. 536, 538; *Astley v. Capron,* 89 Ind. 167, 170; *Butner v. Bowser,* 104 Ind. 255, 3 N.E. 889; *Junker v. Hustes,* 113 Ind. 524, 16 N.E. 197; *Chatten v. Snider,* 126 Ind. 387, 389, 390, 26 N.E. 166, and cases cited; *Bank v. Harris* (this term) 149 Ind. 208, 48 N.E. 856; 7 Am. & Eng. Enc. Law, 130, 131. In *Chatten v. Snider,* supra, this court said: "It is well settled that exemption laws are to be liberally construed with the view to favoring the judgment debtor, and the exemption is not alone for the benefit of the debtor, but for his family as well, and that such construction should be given thereto as will save the debtor and

his family at all times the full exemption which the law bestows."

As further stated in *Union National Bank of Muncie v. Finley,* 180 Ind. 470, 103 N.E. 110, 114 (1913):

The *Constitution of Indiana (article 1, § 22)* enjoined the duty on the General Assembly to enact wholesome exemption laws, and this mandate was obeyed by the enactment of section 745, Burns 1908, which exempts from sale on execution the property of "any resident householder," to the value of $600. These provisions of our Constitution and statute were based on considerations of public policy and humanity; their purpose was not limited to the benefit of the debtor but extended to his family. They have ever been most liberally construed by this court in favor of the debtor. *Pomeroy v. Beach,* 149 Ind. 511, 515, 49 N.E. 370, and cases cited; *Markley v. Murphy,* 180 Ind. 4, 102 N.E. 376.

Finally, of more recent vintage is the Indiana Supreme Court's statement in *In the Matter of Zumbrun,* Ind., 626 N.E.2d 452, 455 (1993):

Like the delegates of 1850, this Court has acknowledged that the various statutes adopted over the years fixing the dollar amount of exemptions represented a policy balancing the interests of lender and debtor. "It has been uniformly held in this State that the constitutional provision relating to exemptions, and the statutes passed pursuant to the requirements thereof, were based upon considerations of public policy and humanity; and that it was not along for the benefit of the debtor, but for his family also, that such laws were enacted, and the same should be liberally construed." *Pomeroy v. Beach* (1898), 149 Ind. 511, 515, 49 N.E. 370, 372 (citations omitted). This liberal construction has typically meant construction in favor of

the debtor. *Union Natl. Bank v. Finley* (1913), 180 Ind. 470, 103 N.E. 110. This rule of liberal construction, of course, has been used in deciding how to apply a given statute to a particular set of facts.

In *In re Miller,* 435 B.R. 561, 565–566, (Bkrptcy.N.D.Ind.2010), this court stated the manner in which interpretation of State of Indiana exemption statutes are to be applied and/or construed:

There is a pattern in decisions of courts which have determined the scope of Indiana's exemption statutes in relation to the exempt nature of distributions in the hands of a recipient from an otherwise exempt fund or source. As the court addressed in *In re Norwood,* Case Number 08–20259 (Memorandum of Decision Concerning Contested Matter, entered as record entry number 30 on October 6, 2009 [pages 7–10] ):

The exemption at issue arises under Indiana law. The scope of a statutory exemption is to be interpreted liberally in favor of the debtor; *Union Nat. Bank of Muncie v. Finley,* Ind. [180 Ind. 470], 103 N.E. 110, 114 (1913); see, *In the Matter of Zumbrun, Ind.,* 626 N.E.2d 452, 455 (1993). In this context, the manner of construction of exemptions under both state and federal law is parallel. As stated by this court in *566 In re Kuhn,* 322 B.R. 377, 385–386 (Bankr. N.D.Ind.2005):

The Seventh Circuit Court of Appeals, in addressing Illinois' ambiguous statutory exemptions of personal property in *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985), stated that "this circuit and the courts of Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." (emphasis supplied). In more pertinent part, the court wrote:

This clear legislative intent to grant protections to debtors and the court's liberal construction of exemption statutes convince us that a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.

*Id.* See also, *In re Owen,* 2002 WL 531570 at *5 (S.D.Ill.) ["Generally, ambiguous bankruptcy exemption provisions should be construed in favor of the debtor"]; *In re De Vries Jr.,* 76 B.R. 917 (Bankr.N.D.N.Y.1987) ["Code § 522(b), and those state exemption statutes adopted pursuant thereto, are to be liberally construed in order to effectuate the debtor's 'fresh start' "]; *In re Vale,* 110 B.R. 396, 400 (Bankr.N.D.Ind.1989) ["Indiana exemption laws are liberally construed to affect their intent and purpose"]; *In the Matter of South Bend Community School Corp.,* 215 B.R. 1012, 1015 (N.D.Ind.1997) ["... if it is possible, to construe an exemption statute in ways that are both favorable and unfavorable to the debtor, then favorable method should be chosen"].

As the forgoing Indiana cases direct, the implementation of I.C. 27–1–12–14 in favor of those benefitted by the statute is constitutionally compelled.

Let's turn to the actual analysis. First, the court determines that I.C. 27–1–12–14(e), including the statutory definition of "proceeds or avails" stated in I.C. 27–1–12–14(b), is clear and has no ambiguity. Under the Trustee's construction, "death benefits" are only "death benefits" when held by the life insurance company, and cease to be "death benefits" as soon as they are paid to the beneficiary intended to be benefited by the policy of life insurance. While the court is loathe to insert dictionary definitions into a legal opinion, the definition of "benefit" stated in Webster's Ninth New Collegiate Dictionary (1991) is in pertinent part the following:[4]

**ben-e-fit**

1 archaic: an act of kindness: BENE-FACTION

2 a: something that promotes well-being: ADVANTAGE

b: useful aid: HELP

3 a: financial help in time of sickness, old age, or unemployment

b: a payment or service provided for under an annuity, pension plan, or insurance policy

. . .

The definition clearly—and commonsensicaly—states that a "benefit" is only a "benefit" if it helps someone. A life insurance policy distribution in the hands of the insurance company doesn't help anyone, except perhaps the insurance company's bottom line with respect to investment income if the benefit payment is delayed and is paid from invested funds.

Let's look at this concept in the context of real life circumstances. Several summers ago this court experienced a run of Chapter 13 cases in which the plans failed because there was a death in the debtor's family—either immediate or extended—which generated funeral and burial expenses, the payment of which precluded the debtor's making payments to the Chapter 13 Trustee. There are innumerable television advertisements seeking to sell small benefit life insurance policies, at

---

**4.** This happens to be the dictionary I have at home, but the standard English usage of the word hasn't changed since 1991, and was the same in 1981 when the pertinent statute was enacted. No offense, but I have never found *Black's Legal Dictionary* to be helpful, or relevant.

low fixed premiums, to induce "senior citizens" to buy them for the expressed purpose of providing a fund for funeral and burial expense. In many circumstances these commercials are intended to induce a form of guilt on the part of the targeted insured for not providing for a spouse in the event of the target's death. If there was ever an exemption under Indiana law that was constitutionally compelled—as directed by Indiana courts—it is the exemption for life insurance paid to the spouse of the decedent. In the *Estate of Chiesi v. First Citizens Bank*, Ind.App. 604 N.E.2d 3, 5, the Indiana Court of Appeals stated the following with respect to essentially the statute at issue in this case:

> In interpreting a statute, we are guided by the language of the statute and the legislative intent which we ascertain from it. *City of Indianapolis v. Evans* (1940), 216 Ind. 555, 24 N.E.2d 776. In this instance, both the language and intent are clear. The proceeds of a life insurance policy are exempt from creditors' claims when the policy names a spouse as beneficiary and those proceeds are held for the benefit of that spouse. The public policy brought to life in this statute is an effort to protect beneficiaries, reliant on the proceeds of the insurance policy for their well being, from the claims of the decedent's creditors. A balance was struck between the desire to protect the decedent's loved ones, and the need to protect the rightful claims of decedent's creditors. That balance was reached by allowing certain named beneficiaries to receive protection.

In construing essentially the same statute at issue in this case, in *Dock v. Tuchman*, Ind.App. 497 N.E.2d 945, 947 (1986), the following was stated:

> In summary, the statute is clear. Life insurance proceeds are exempt from any claim or debt of the insured or his spouse. *The statute needs no interpretation.* We are asked to engraft upon the statute exceptions where the judgment was the result of tort, or incurred as a result of fraud. The statute does not say that, but uses the all-inclusive terms of debt or claim. It is not our province to rewrite that section or redetermine public policy as established by the legislature. (emphasis supplied).

The most compelling and binding directive concerning the scope of Indiana's life insurance benefit exemption was determined by *In re Weaver*, 93 B.R. 172 (N.D.Ind.1988). In *Weaver*, the issue was whether the proceeds of a workman's compensation settlement, when received by the workman, was exempt under the language of the Indiana workman's compensation statute's exemption. As must be done with respect to the construction or interpretation of any ambiguous Indiana exemption statute, the United States District Court in *Weaver* started with the language of the statute, and compared it to the language of other Indiana exemption statutes to determine whether received proceeds continue to be exempt. The Court compared the language of the workman's compensation statute's exemption with the language of other exemption statutes, and stated:

> The trustee's first argument is that the exemption, which he concedes is afforded workmen's compensation payments, does not apply to cash in the hands of a debtor. Under Indiana law, money in the hands of a debtor stands on the same footing as any other money held by the debtor, even if the money is derived from exempt payments. See *Sohl v. Wainwright Trust Co.*, 76 Ind. App. 198, 130 N.E. 282 (1921); *Faurote v. Carr*, 108 Ind. 123, 9 N.E. 350 (1886). Under this case law, the legislature can only grant exemptions in proceeds by

explicitly stating that the proceeds are exempt. Exemptions afforded to aged, blind and disabled persons, for example, provide that "none of the money paid or payable under the provisions of this chapter shall be subject to execution, levy, attachment,...." See *I.C. § 12–1–5–12 (1981); I.C. § 12–1–6–12 (1981); I.C. § 12–1–7.1–14 (1981).* The life insurance statute is just as explicit. See I.C. § 27–1–12–14 (1985). Money paid by a fraternal benefits society is exempted "either before or after payment by the society." *I.C. 27–11–6–3 (1985). Where the legislature of Indiana has given exemptions it has chosen statutory language which is clear and unequivocal.* 93 B.R. 172, 174 (emphasis supplied).

The court determined that I.C. § 27–1–12–14 was explicit in protecting *paid* proceeds. This determination is not *"dictum"*. In *United States of America v. Crawley,* 837 F.2d 291, 292–293 (7th Cir. 1988) the Seventh Circuit Court of Appeals defined "dictum" as follows:

> We have defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. American Home Products Corp.,* 798 F.2d 1075, 1084 (7th Cir.1986). "[D]ictum is a general argument or observation unnecessary to the decision.... The basic formula [for distinguishing holding from dictum] is to take account of facts treated by the judge as material and determine whether the contested opinion is based upon them." *Local 8599, United Steelworkers of America v.*

*Board of Education,* 162 Cal.App.3d 823, 834, 209 Cal.Rptr. 16, 21 (1984). A dictum is "any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication." *Stover v. Stover,* 60 Md.App. 470, 476, 483 A.2d 783, 786 (1984). It is "a statement not addressed to the question before the court or necessary for its decision." *American Family Mutual Ins. Co. v. Shannon,* 120 Wis.2d 560, 565, 356 N.W.2d 175, 178 (1984).

Judge Lee's analysis of the Indiana life insurance exemption statute in contrast to the workmen's compensation exemption statute was necessary to, and an integral part of, the decision, and clearly differentiated the two statutes. It is not *dictum.* This court is bound by the decision in *In re Weaver, supra.*

The Trustee has sought to differentiate I.C. 27–1–12–14(e) from other Indiana statutes which, by the use of various phrasing, have been determined to provide continuing exemption after property which is the subject of an exemption is received by a beneficiary or payee. That attempt fails. When one applies applicable law—and simple common life experience and common sense—to the issue at hand concerning the Trustee's objection to Davis' claim of exemption, only one conclusion—and an absolute one at that—is possible. I.C. 27–1–12–14(e) clearly provides exemption for the funds at issue in this case, i.e., distributions *made* under a policy of life insurance, which are "benefits" when received by the beneficiary.[5] In short, a benefit payable under a life insurance poli-

---

**5.** The funds have been stipulated by the parties to be directly traceable and segregated in a bank account.

cy is no benefit at all until it has been received by the beneficiary, and that is exactly what the statute says.

In *It's a Wonderful Life*, George Bailey swallows his pride and approaches Henry F. Potter for a loan to cover an $8000 imbalance on the books of the Bailey Bros. Savings and Loan, offering a life insurance policy as collateral for the loan. Potter denies the loan request with the following edited soliloquy:

> Mr. Potter: [to George Bailey] Look at you … No securities, no stocks, no bonds, nothin' but a miserable little $500 equity in a life insurance policy.

There are many, many George Baileys in Indiana. These are people whose financial lives vacillate from day to day, month to month and year to year—some of whom diligently seek to alleviate the burden of death expenses and the financial burden of loss by means of life insurance policies which provide benefits for those left behind. To those George Baileys, the benefits received from a life insurance policy, even a small death benefit intended to defray the expenses of a funeral, are a lifeline to surviving spouses and families, a lifeline which the Indiana legislature has historically extended by means of life insurance exemption statutes to certain classes of beneficiaries, including surviving spouses like Davis in this case.

The court determines that Davis' claim of exemption stated in her amended Schedule C is sustained, and that the Trustee's objection to that exemption is overuled. As a result of this determination, Davis' objection to the Trustee's motion for turnover is sustained, and that motion is denied.

IT IS ORDERED, ADJUDGED AND DECREED that the exemption of $8,000.74 claimed by Davis in her amended Schedule C filed as Record Number 34 on February 25, 2014, with respect to "Whole Life Insurance Proceeds from deceased husband in Harris Bank Account" pursuant to I.C. 27–1–12–14(e), is sustained, and that the Trustee's Record Number 39 objection to that claim of exemption is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the objection filed by Davis as Record Number 36 to the Record Number 32 motion for turnover filed by the Trustee is sustained, and that the motion for turnover is denied.

